Paul T. WALKER, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 29S00–8704–CR–443.

Supreme Court of Indiana.

Aug. 26, 1988.

Gerald M. DeWester, Noblesville, for appellant.

Linley E. Pearson, Atty. Gen., Louis E. Ransdell, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant–Appellant Paul T. Walker was tried by jury in the Hamilton Circuit Court and convicted of a class D felony handgun violation which was enhanced by thirty (30) years pursuant to a habitual offender filing, for a total term of thirty-four (34) years.

We have consolidated the issues presented to us on this direct appeal into five:

1. denial of Walker's motion to suppress evidence;

2. error in comments of the State during closing argument;

3. refusal of Walker's tendered final instructions No. 2;

4. sufficiency of the evidence; and

5. errors in sentencing.

On May 19, 1986, Officer Kenneth Whisman of the Hamilton County Sheriff's Department and other law enforcement officers had Walker under surveillance. Walker was suspected of perpetrating a number of burglaries in Hamilton and Boone counties. In 1978 Walker had been convicted of burglary in Shelby County; the method used in those burglaries was precisely that used in the series of burglaries in Hamilton and Boone counties. The perpetrator drove a van which contained maps of the area, various tools, and a bicycle or motorcycle. The burglaries were committed late at night, usually when the occupants of the residences were asleep upstairs and not aware of his presence. He would park his vehicle at some distance from the target residence and use the bicycle to approach the home. He would usually force open a rear door and incapacitate any protective electronic devices to gain entry. He would hide contraband from the burglarized residence in shrubbery near the scene of the burglary, return to the van, replace the bicycle and, later that night, drive to the point where he hid the contraband and retrieve it. Oftentimes a billfold or briefcase, with the money removed, was found in shrubbery near a burglarized residence.

When the police observed Walker in the Hamilton County area in a van they placed him under surveillance. They knew Walker was paranoid about being followed so they set up a very loose network of vehicles which did not approach Walker's vehicle closely but was located so he could not leave an area without one of the surveillance team observing him.

On May 19, 1986, Officer Whisman and other law enforcement officers were watching Walker; they observed Walker at his sister's garage. He placed an unknown object underneath the van he was driving. They also observed that a licence plate illumination light and a taillight were not functioning on the vehicle. At about 3:20 a.m., the police stopped Walker for the licence plate and taillight violations. Other vehicles from the surveillance team and a large number of officers closed in on the stop with drawn pistols. Officer Whisman testified the police were aware Walker carried a hand weapon on his person or in his vehicle. They had been advised of this by police officers who arrested him in the Shelby County burglaries in 1978. Officer Whisman had also received information from a Detective of the Indianapolis Police Department that Walker met the description of a burglary suspect who had been flushed from a residence in 1985, and then had exchanged shots with a police officer before running into a clothesline and dropping his gun, an H & R 22 caliber nine shot revolver. Whisman testified further that a reliable informant advised that Walker was currently carrying a nine shot H & R 22 caliber revolver with him in a holster and belt.

When Walker was stopped he immediately exited his vehicle, the police approached him and ordered him to place his hands against the side of the van. Detective Landis, aware of Walker's having been seen placing something under his vehicle, reached under the vehicle at the point indicated and found, attached to the underside of the van, a metal box with a lid that was not locked. He withdrew several items including a handgun. Walker was known to have previous felony convictions; he stated to officers he did not have a permit for the gun. He was then placed under arrest.

## I

The first issue we address is that of trial court error in denying Walker's motion to suppress. Walker seeks suppression based on the contention the police did not have probable cause to stop his vehicle in the first place and therefore had no right to search his vehicle. He further claims that after having stopped him for misdemeanor violations which were clearly a pretext utilized to stop and search his vehicle, police went beyond the bounds of permissible area of search by going into the latched metal box attached to the underpart of the van.

■ In response the State relies on *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, followed by this court in *Broadus v. State* (1986), Ind., 487 N.E.2d 1298. Terry provides that a police officer may make an initial or investigatory stop of a person or automobile where probable cause for arrest is lacking when the facts known to the officer at the time of the stop are such as to warrant a belief in a man of reasonable caution that investigation is appropriate. Walker's activities on this night were such that by loose surveillance it was known he left his vehicle for some time and may have committed a burglary in the Hamilton County area. The police were aware he was a convicted felon and had cause to believe he was carrying a weapon.

The State further relies on *United States v. Ross* (1982), 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572. The fact situation in *Ross* was that a reliable informant telephoned Detective Marcum of the District of Columbia Police Department and told him an individual known as "Bandit" was selling narcotics from the trunk of a car parked at 439 Ridge Street. The informant stated he had observed "Bandit" complete a sale and had been told by "Bandit" that additional narcotics were in the trunk. The informant gave Marcum a detailed description of "Bandit" and his automobile. Marcum and other police officers drove to the area and observed the automobile described to them, including the license plate. They also saw Albert Ross, who fit the description given to them by the informant. They observed "Bandit" for some time but did not see him doing anything. They then observed him leaving the area so they pulled alongside of him, noted the driver matched the informant's description, and stopped the car. He was ordered out of the vehicle. When they searched the vehicle they found a bullet in the front seat and a pistol in the glove compartment. Ross was then arrested and handcuffed. Detective Cassidy then took Ross's keys and opened the trunk where he found a closed brown paper sack. He opened it and discovered a white powder which later was determined to be heroin. The vehicle was confiscated and taken to the police garage where Officer Cassidy searched it further, without a warrant, and found a zippered pouch containing $3200.00.

Ross was charged with possession of heroin with intent to distribute and was later convicted. His motion to suppress was denied by the district court. The court of appeals reversed his conviction but on appeal the United States Supreme Court reversed the court of appeals, and found the police had probable cause to stop and search Ross's vehicle. The Court also found under *Carroll v. United States* (1925), 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, the police were justified in the stop and search of Ross's vehicle. We see no merit to Walker's contention that stopping his vehicle for the taillight and licence plate light violations was nothing more than a pretense and a ruse to stop and search him. It is apparent this was not the police officers' primary interest in him that night. It was, however, observation of a violation and justified a stop. Furthermore, the facts set out above demonstrate the police had facts within their knowledge sufficient to form probable cause that Walker was illegally carrying a weapon. In addition, they had grounds to stop and investigate pursuant to *Terry*, 392 U.S. 1, 88 S.Ct. 1868, based on their suspicions of a burglary in Hamilton County. It turned out there was no burglary in Hamilton County and, of course, no contraband was apparent to indicate there was one, but a reasonable suspicion is enough to justify such an investigatory stop. After having stopped

Walker, the police readily found the weapon in a search authorized by *Ross*, 456 U.S. 798, 102 S.Ct. 2157, *Carroll*, 267 U.S. 132, 45 S.Ct. 280; and opinions by this court. *Broadus*, 487 N.E.2d 1298; *Taylor v. State* (1980), 273 Ind. 558, 406 N.E.2d 247. *See also Jones v. State* (1985), Ind., 472 N.E.2d 1255; *Partlow v. State* (1983), Ind., 453 N.E.2d 259, *cert. denied* 464 U.S. 1072, 104 S.Ct. 983, 79 L.Ed.2d 219.

Walker also moved for judgment on the evidence at the close of the State's evidence based on his position that the pistol should not have been admitted into evidence. Resolution of the motion to suppress so resolves this issue. The trial court properly denied Walker's motion to suppress.

## II

■ Walker claims the prosecuting attorney improperly commented on his failure to testify. The first comment in question was:

It's a pretty strange coincidence that if this other person supposedly bought this gun and it showed up in this defendant's vehicle. Strange coincidence which on the evidence in front of you we have absolutely no support for, Number One. And Number Two, no explanation for. That's again, that's speculation. You know, somehow and someway maybe this person who we have no evidence about may have come in and somehow put that gun there . . .

Walker claims the prosecutor made a second improper comment in closing argument, regarding a metal box into which Walker was seen to place something which later proved to be the pistol. He made such statements as: "Maybe it was open. We just don't have evidence about it." And later, "Those are the facts. Those are the only facts that you have heard. I'm not going to speculate on those facts. And neither should you." Walker moved for mistrial when these statements were made and the trial court overruled the motions.

We agree with the trial court. The statements were not improper comment on Walker's failure to testify. The statements were based on the evidence presented and

represent a proper comment on the strength of the State's case. Similar comments by the prosecution have been upheld by this court. *Harper v. State* (1985), Ind., 474 N.E.2d 508, 510 ("The only person who said that the act was consensual was defendant's attorney and he wasn't there was he?"); *Mayes v. State* (1984), Ind., 467 N.E.2d 1189, 1196 ("Defendant's attorney is not precluded from introducing evidence."); *Pitman v. State* (1982), Ind., 436 N.E.2d 74, 79 ("There is no sworn testimony before you today that disputes that.")

No reversible error is presented on this issue.

## III

■ Walker next asserts it was error for the trial court to refuse his tendered final instruction No. 2. The tendered instruction read:

The statute which defines the offense alleged herein is criminal in nature and therefore when you are examining it in the light of the evidence, you must construe the statute strictly against the state. Any ambiguity in this statute is to be resolved in favor of the Defendant. Since this is a penal statute, it can not [sic] be construed to include anything beyond its letter, though within its spirit, and this statute cannot be enlarged by construction, implication or intendment beyond the fair meaning of the language used.

In reviewing the refusal of an instruction we determine whether there is evidence to support the giving of an instruction, whether the instruction properly states the law and whether the substance of the tendered instruction is covered by other instructions given. *Smith v. State* (1984), Ind., 468 N.E.2d 512, 517. The trial court gave its final instruction No. 1 which provided as follows:

It is the duty of the court to instruct you at this time concerning the matters of law which are necessary for your information in giving your verdict.

In discharging this duty, the court has no right to assume and does not assume that any fact or facts have been estab-

lished or not established, it being your exclusive right and duty under the Constitution of the State of Indiana to determine from all of the evidence what has and what has not been proven.

Since this is a criminal case, the Constitution of the State of Indiana makes you the judges of both the law and the facts. Though this means that you are to determine the law for yourself, it does not mean that you have the right to make, repeal, disregard, or ignore the law as it exists.

If you have no well-defined opinion as to what the law is relating to any particular matter or matters at issue in this case, then, in determining the law, you should give the instructions of the court respectful consideration.

Instruction No. 1 was a proper statement of the law and one the jury could understand in its role as the trier of facts. The trial court properly rejected Walker's tendered instruction No. 2; the court found it was a statement of the law to be applied at the appellate level and not the trial level, and would invade the jury's province to determine what the law is. We further observe the instruction would be very confusing to the jury. Since the trial court properly instructed the jury on this subject, it properly refused Walker's tendered instruction No. 2.

## IV

■ Walker claims there was insufficient evidence of probative value to support the jury's guilty verdict as to carrying a handgun, and to support the conclusion he was an habitual criminal. Our standard for reviewing sufficiency claims is well established. We do not reweigh the evidence nor judge credibility of witnesses. If there is substantial evidence of probative value to support the conclusion of the trier of fact, the verdict will not be overturned. *Alfaro v. State* (1985), Ind., 478 N.E.2d 670, 672. Walker argues that since the gun was in a box attached to the underside of the van, it was not in the van as required by statute. In Issue I above, Walker argued a search of the box was improper; it was analogous to a search of the trunk of a

car because it was *in* the car. We see no merit to Walker's argument on this issue. There is little difference between a receptacle Walker himself constructed on a part of the vehicle and a glove box or trunk space constructed by the manufacturer. The space was used in the same manner one uses a trunk or glove box. The jury was justified in finding the weapon in the box was "in" the vehicle while it was in the metal box attached to the underside of the van, since that was a part of the vehicle as well as any other compartment or receptacle might be.

Walker also claims the State failed to prove he was an habitual offender. He claims the documentation regarding the commission of two previous unrelated felonies used to support the habitual offender charge are not properly certified and do not show the proper sequence of commission and conviction to satisfy the mandate of IC 35–50–2–8. The record does not support Walker's claims. The documents evidenced two groups of two convictions. The record indicates each group showed two convictions related to each other and supporting documentation of one tended to prove the other. Walker contends each group would support only one conviction for purposes of habitual offender status. This, of course, is true. The first set shows two convictions for felonies in Marion County in 1971. Walker raises no question about documentation of these two convictions and they satisfy the statute in proving a 1971 conviction and sentencing. The second set involves convictions from Shelby and Hancock counties, both of which arise from a series of burglaries in those counties and demonstrate convictions in 1978. Proof of either one of these would satisfy the requirements of 35–50–2–8 and supports the habitual offender finding. Walker claims the Hancock County conviction was defective in that State's Exhibit 8, a commitment order by the trial judge, was not properly certified. The record clearly demonstrates Exhibit 8 consisted of two pages, obviously the front and back of this same document. Certification appeared on the second page and the court properly found the entire

document was certified. However, this was not the only evidence supporting the Hancock County conviction. The Sheriff of Hancock County testified that he arrested Walker for the charge and had personal knowledge he was tried and found guilty in 1978, and sponsored two photographs of Paul Walker that were placed into evidence. State's Exhibit 6 was the charging information filed against Walker for a theft charge, indicating the commission of the crime was July 6, 1978. Therefore the record has supporting documentation showing the 1978 felony commission, conviction, and commitment. Photographs and fingerprints were also placed into evidence to support the documentation. The record clearly demonstrates there was sufficient evidence before the jury pursuant to IC 35-50-2-8 to find beyond a reasonable doubt Walker was an habitual offender.

## V

Finally, Walker claims the trial court erred by refusing to accept his asserted mitigating factor and imposing a sentence which is manifestly unreasonable in light of the nature of the offense and character of the offender. The court found no mitigating circumstances. Walker contends the court should have found as a mitigating circumstance the fact that he did not harm or threaten harm to anyone. It is within the discretion of the trial court to find if any fact establishes a mitigating circumstance, since the legislature did not mandate the trial court be forced to consider any factor as mitigating. This is a discretionary matter which is reviewed by this court; we determine whether there was an abuse of discretion in a given case. IC 35-38-1-7(c), formerly 35-4.1-4-7(b) and 35-50-1A-1, provide that the court may consider certain factors and mitigating circumstances. We have interpreted this statute to mean the trial court is not required to consider the factors enumerated thereunder as mitigating circumstances. The court may, in its discretion, so consider the factors listed in the statute. *Kocher v. State* (1982), Ind., 439 N.E.2d 1344, 1346. The court found aggravating circumstances to be that Walker has a criminal history.

The record supports the court's finding, and as already indicated in this opinion, the charge itself is the carrying of a handgun by one previously convicted of a felony and, in Walker's case, several felonies. We cannot say the trial court abused its discretion by failing to find mitigating circumstances.

The court imposed a maximum sentence of four years for the handgun violation, which is a class D felony. Since it was a class D felony, the court could have subtracted up to twenty (20) years from the thirty (30) year habitual offender penalty. The court also could have sentenced Walker to one (1) year for a class D felony. This again was a judgment for the trial court to make and we review that judgment pursuant to Ind.R.App.Rev.Sen. 2 to determine whether such judgment is manifestly unreasonable in light of the nature of the offense and the character of the offender. A sentence is not manifestly unreasonable unless no reasonable person could find such sentence appropriate to the particular offense and offender. *Jones v. State* (1983), Ind., 456 N.E.2d 1025, 1030. Walker had nine (9) prior felony convictions. In view of all the facts and circumstances here, we cannot find the sentence so manifestly unreasonable to justify our second guessing the trial court.

The trial court is affirmed.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.