James **MALONE**, Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–0701–CR–18.**

Court of Appeals of Indiana.

March 20, 2008.

Rehearing Denied May 22, 2008.

Bryan Lee Ciyou, Ciyou & Dixon, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Zachary J. Stock, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

May police officers seize a handgun from an individual standing on the front porch of his home without a search warrant and in the absence of an articulable basis for concerns of officer safety or a reasonable belief that a crime was afoot? We hold that they may not, and we reverse the trial court's denial of the motion to suppress filed by James Malone.[1]

We reverse.

---

1. James Malone is now known as Mangwiro Sadiki–Yisrael. We acknowledge the name

## FACTS AND PROCEDURAL HISTORY

Indianapolis Police Officers Mark Rand, Thomas Figura, and Joseph Kraeszig responded to a report that a man was standing on the front porch of a house, located at 818 N. Tuxedo Street, armed with a shotgun. Upon arrival, the officers encountered Malone, his wife, his brother-in-law, and a cable TV installer on the porch. There was no shotgun present. The officers questioned the group for several minutes and informed them that the display of a shotgun is not illegal, but may be upsetting to neighbors. Malone then announced that they were going inside. At this point, Officer Rand noticed an object along Malone's waistband and observed a "metal glint" from either under or through Malone's shirt. *Tr.* at 9. Officer Rand then shouted "gun," pushed Malone away from the group, and removed a pistol from Malone's waistband. *Id.* at 9–10. Subsequent investigation revealed that Malone had been convicted of a crime [2] set forth in I.C. 35–47–4–5. Malone was arrested and charged with unlawful possession of a firearm by a serious violent felon, a Class B felony. Malone filed a motion to suppress the handgun, which the trial court denied. Malone now appeals.

## DISCUSSION AND DECISION

When reviewing the trial court's ruling on a Motion to Suppress, this court does not reweigh the evidence, but determines if there is substantial evidence of probative value to support the trial court's ruling. *State v. Straub*, 749 N.E.2d 593, 597 (Ind.Ct.App.2001). We look to the totality of the circumstances and consider all uncontroverted evidence, together with conflicting evidence that supports the trial court's decision. *Id.*

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures by the Government. *State v. Atkins*, 834 N.E.2d 1028, 1032 (Ind.Ct.App.2005). Generally, a search warrant is a prerequisite to a constitutionally proper search and seizure. *Halsema v. State*, 823 N.E.2d 668, 676 (Ind.2005). The defendant has the burden of showing a constitutional infirmity if a search or seizure was carried out pursuant to a warrant. *U.S. v. Esser*, 451 F.3d 1109, 1112 (10th Cir.2006). However, when a search is conducted without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search. *Coleman v. State*, 847 N.E.2d 259, 262 (Ind.Ct.App.2006), *trans. denied* (citing *Burkett v. State*, 785 N.E.2d 276, 278 (Ind.Ct.App.2003)).

One such exception is that a police officer may briefly detain a person for investigatory purposes without a warrant or probable cause if, based upon specific and articulable facts together with rational inferences from those facts, the official intrusion is reasonably warranted, and the officer has reasonable suspicion that criminal activity "may be afoot." *Moultry v. State*, 808 N.E.2d 168, 170–71 (Ind.Ct.App. 2004) (citing *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

In addition to detainment, *Terry* permits a reasonable search for weapons for the protection of the police officer, where the officer has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he

---

change, but since all events here relevant occurred when Mr. Sadiki–Yisrael was known by the name of James Malone, we use his former name.

**2.** Malone was convicted of conspiracy to commit murder when he was seventeen (17) years old.

has probable cause to arrest the individual for a crime. *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. *Id.*

■ The *Terry* stop and frisk rule, however, applies to cases involving a brief encounter between a citizen and police officer on a public street. *Atkins*, 834 N.E.2d at 1032 (citing *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000)). The encounter in this case did not occur on a public street and, therefore, was not a *Terry* stop. The State concedes that *Terry* does not apply.

In this case, since a warrant was not obtained to seize the weapon from Malone, it is necessary to determine if seizure of the gun was justified by some exception. The State contends that Officer Rand removed the weapon to protect the safety of the officers. Officer safety is of paramount importance. Police officers are daily placed in difficult and dangerous situations, some of which are life threatening. The law has to provide protections for such officers. At the same time, in a free society there must be a reasonable basis for a warrantless search of our persons and homes; hence, our constitutional protections against unreasonable searches and seizures. Between these extremes, courts engage in a very difficult undertaking balancing these competing values and determining where the line separating the reasonable and unreasonable should be drawn. Here, it is significant that although the State claims on appeal that the seizure of the weapon was done in the interest of officer safety, none of the officers testified to any such concerns.

■ In this case, prior to the seizure of the gun, police did not express any concerns about officer safety. They did not inquire about the presence of weapons or pat down anyone present. Neither Malone, nor anyone else present had threatened the police officers either verbally or physically. In fact, Officer Figura testified that Malone was respectful and polite. *Tr.* at 27. It was only when Malone asked the police officers to leave and began to walk back into his house that Officer Rand saw what he believed indicated the presence of a gun and seized it from Malone.

Furthermore, at the time they seized the gun, the officers did not have information leading them to believe that Malone had been convicted of any crime, which could render him a serious violent felon or his possession of a weapon illegal. They had no information leading them to believe that a crime had been or was about to be committed. The only reason for their presence at Malone's home was a report of someone possessing a shotgun on the premises, which is not a crime.

Finally, at the hearing on the motion to suppress, none of the officers testified that he felt any concern for officer safety. In the absence of an articulable basis that either there is a legitimate concern of officer safety or a belief that a crime has been or is being committed, a pat-down search pursuant to a *Terry* stop is not justified, nor is seizure of a weapon from one standing on the front porch of his home. Here, neither condition was satisfied, and we conclude that the seizure of the weapon on Malone's person was illegal. As such the trial court should have suppressed the evidence.

Reversed.

ROBB, J., and BARNES, J., concur.