Anthony A. PARISH, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 02A03–1002–CR–74.

Court of Appeals of Indiana.

Nov. 9, 2010.

Transfer Denied Jan. 14, 2011.

John C. Bohdan, Deputy Public Defender, Fort Wayne, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Stephen R. Creason, Chief Counsel and Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATHIAS, Judge.

Following a jury trial, Appellant–Defendant Anthony A. Parish ("Parish") was convicted of murder, Class B felony robbery, and Class A misdemeanor carrying a handgun without a license, and was sentenced to an aggregate term of eighty-six years incarceration. Parish appeals and claims that a protective search of a locked glove box during a traffic stop was constitutionally improper and that the evidence found during the search should have been suppressed. Concluding that the protective search was permissible under the Fourth Amendment, we affirm.

### Statement of Facts

In the early morning hours of August 25, 2008, Fort Wayne police found Antoine Woods shot to death in the front seat of his car near "the Dove Shack" bar. Parish had been partying with friends that night at a carwash near the bar and was seen in possession of a .38 caliber handgun. In fact, Parish was videotaped that night holding the handgun. Between 12:30 a.m. and 12:45 a.m., Parish left with some of the people at the carwash to go to the Dove Shack bar. Parish returned approximately one hour later wearing a silver necklace with a round charm that looked identical to a necklace that Woods wore. Parish told his friends, "I did a petty murder." Trial Tr. p. 177.

Nine days after the murder, on September 3, 2008, Fort Wayne Police Officer Raquel Foster ("Officer Foster") was in her patrol car when she observed a vehicle

make a turn without using a turn signal. Officer Foster initiated a traffic stop of the car and, although the windows of the car were darkly tinted, recognized the driver as Parish because the driver's side window was down. Officer Foster immediately called for backup because Fort Wayne police officers were on "high alert" that Parish was armed. Parish was also a suspect in several shootings, including the murder of Woods. And approximately two weeks prior to the stop, an officer in the "gang unit" of the police department had warned other officers that Parish had threatened to kill the next police officer he encountered and claimed that his cocaine or methamphetamine use would numb him to any pain if he got into a shootout with the police.

Before any backup arrived, Officer Foster quickly approached the car and told Parish to step out of the vehicle. Parish did not immediately comply, but asked Officer Parish why she did not want to see his driver's license, vehicle registration, or proof of insurance. Officer Foster told Parish that she knew who he was and repeated her instructions to step out of the car. This time, Parish slowly took off his seat belt and got out of his car. Officer Foster took Parish to the back of his car and began a pat-down search. Before Officer Foster could finish the pat-down search, Officer Drummer arrived on the scene, handcuffed Parish, and started another pat-down search.

While Parish was handcuffed and being patted down by Officer Drummer, Officer Foster began a protective search of Parish's car. At the suppression hearing, Officer Foster explained that she was specifically looking for a handgun because of the reports that Parish was armed. Officer Foster looked under the seats, between the seat and the console, and behind the seats, or as she explained at the suppression hearing, "wherever I could reach." Suppression Tr. p. 11.

When Officer Foster attempted to open the glove box, it was locked. She therefore "immediately" pulled the key from the ignition and unlocked the glove box "without even thinking." *Id.* at 11–12. Inside, she found a Smith and Wesson revolver, a small scale, and a plastic baggie with a leafy green substance that Officer Foster identified as marijuana. Officer Foster explained her reasons for the search of the glove box by stating that, because she had pulled Parish over for a traffic stop, "I was just, within his reach, anything, because if I put him back into that car, anything that was within his reach." *Id.* at 12.

Officer Foster confiscated the handgun and contraband from the glove box and informed Officer Drummer of what she had found. They then secured Parish by placing him inside one of the patrol cars. Officer Foster ran a check on Parish's license, the vehicle registration, and the VIN number, which revealed no problems.[1] Despite the fact that she had just found Parish in possession of handgun and marijuana, Officer Foster simply issued a citation to Parish for failure to use a turn signal, put him back into his car, and let him go.

Some time after the traffic stop, Parish told one of his companions that the police had to let him go because "he had a license," but that the police had recovered "[t]he gun, .38 revolver." Trial Tr. p. 178. Eventually, the bullets that were recovered from the murder scene were found to ballistically match the revolver Officer Foster took from Parish's glove box.

### Procedural History

On January 8, 2009, four months after the traffic stop, the State charged Parish

---

1. The car was registered to Parish's grandmother.

with murder, felony murder, Class A felony robbery resulting in serious bodily injury, and Class C felony carrying a handgun without a license, with all charges stemming from the shooting death of Antoine Woods. Parish filed a motion to suppress on May 15, 2009, seeking to exclude the evidence seized during the search of his car. The trial court held a hearing on this motion on June 26, 2009, and denied the motion at the conclusion of the hearing.

A jury trial was held on November 17 and 18, 2009. At the conclusion of the trial, the jury found Parish guilty as charged. At a sentencing hearing held on December 18, 2009, the trial court vacated the felony murder conviction, as it "merged" with the murder conviction, and entered judgment of conviction only on the murder conviction. The trial court entered judgment of conviction for robbery as a Class B felony based on the use of the deadly weapon, and entered judgment of conviction for carrying a handgun without a license as a Class A misdemeanor. The trial court sentenced Parish to sixty-five years on the murder conviction, twenty years on the robbery conviction, and one year on the carrying a handgun without a license conviction, and ordered all sentences to be served consecutively, for an aggregate sentence of eighty-six years. Parish now appeals.[2]

### Standard of Review

■ Parish claims that the trial court erred in denying his motion to suppress. Because Parish appeals following his conviction and is not appealing the trial court's interlocutory order denying his motion to suppress, the question is properly framed as whether the trial court abused its discretion in admitting the handgun into evidence. *See Washington v. State,* 784 N.E.2d 584, 587 (Ind.Ct.App.2003). But whether the challenge is made by a pre-trial motion to suppress or by trial objection, our standard of review of rulings on the admissibility of evidence is essentially the same. *Ackerman v. State,* 774 N.E.2d 970, 974–75 (Ind.Ct.App.2002), *trans. denied.* We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling, but we also consider the uncontested evidence favorable to the defendant. *Collins v. State,* 822 N.E.2d 214, 218 (Ind. Ct.App.2005), *trans. denied.*

### Discussion and Decision

■ On appeal, Parish claims that Officer Foster improperly searched his locked glove box. Specifically, Parish claims that Officer Foster had no reasonable fear for officer safety that would justify a protective search of the passenger compartment of the car. Parish acknowledges that an officer with a reasonable suspicion that a motorist is dangerous and may be able to gain immediate control of weapons may conduct a protective search of the passenger compartment of the vehicle without a warrant. *See Michigan v. Long,* 463 U.S. 1032, 1049–50, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983). As set forth in *Long*:

[P]rotection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect. These principles compel our con-

---

2. We heard oral argument in this case on September 16, 2010, at the Indiana University School of Law—Indianapolis. We extend our thanks to the students, staff, faculty, and administration of the school for their hospitality, and we commend counsel for the quality of their written and oral advocacy.

clusion that the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons. "[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger."

*Id.* (quoting *Terry v. Ohio,* 392 U.S. 1, 21, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)); *see also Gann v. State,* 521 N.E.2d 330, 333 (Ind.1988) ("Once a vehicle has been stopped for investigative purposes, an officer may conduct a search for weapons, without first obtaining a search warrant, if the officer reasonably believes that he or others may be in danger."). But such protective searches must be confined to "those areas in which a weapon may be placed or hidden." *Long,* 463 U.S. at 1049, 103 S.Ct. 3469. And " '[t]he purpose of a limited search for weapons after an investigative stop is not to discover evidence of a crime, but to allow the officer to pursue his investigation without fear for his safety or the safety of others.' " *Jackson v. State,* 785 N.E.2d 615, 620 (Ind.Ct.App.2003) (quoting *State v. Joe,* 693 N.E.2d 573, 575 (Ind.Ct.App.1998)).

■ Here, Parish claims that Officer Foster did not have a reasonable belief based on specific and articulable facts that would warrant her belief that he was dangerous and might gain immediate access to weapons, focusing on the fact that Officer Foster observed no furtive movements by Parish. Under the applicable standard of review, we are unable to agree.

At the time of the traffic stop, Parish was a suspect in several shootings, including a homicide, and the police were on high alert that Parish was armed. Indeed, a "gang unit" officer had warned other officers that Parish had threatened to kill the next police officer he encountered and was even taking drugs in preparation for a shootout with the police. In addition, when Officer Foster first approached Parish's car and told him to step out of the vehicle, Parish did not immediately comply. He instead asked Officer Foster why she did not want to see his driver's license and registration. Only when Officer Foster explained to Parish that she knew who he was and again told him to step out of the car did he slowly take off his seat belt and exit the car.

Under these facts and circumstances, a reasonably prudent person in Officer Foster's position would be warranted in the belief that her safety was in danger. Officer Foster was therefore justified in searching the passenger compartment of Parish's car, limited to those areas in which a weapon might be placed or hidden. *See Castle v. State,* 476 N.E.2d 522, 524 (Ind.Ct.App.1985) (holding that officer safety concerns justified pat-down search of passenger of car during traffic stop where occupants of car were suspects in armed robbery, passenger refused to comply with officer's request to keep his hands on the dashboard, and passenger had his fingertips inside his jacket); *see also State v. Dodson,* 733 N.E.2d 968, 970 (Ind.Ct.App.2000) (holding that police officer had reasonable concern for safety justifying protective search of car during traffic stop where officer observed the driver making furtive movements with his hands, the driver did not immediately comply with the officer's request to exit the vehicle, and the driver was wearing an empty shoulder holster); *Joe,* 693 N.E.2d at 575 (conclud-

ing that police had reasonable concerns for safety justifying protective search of car during traffic stop where officer observed the defendant "fidgeting" with his hands between the driver's seat and console, the defendant did not initially comply with the officer's request to show his hands, and only showed his hands when ordered to do so at gunpoint); *cf. Jackson v. State,* 785 N.E.2d 615, 620 (Ind.Ct.App.2003) (holding that protective search of car during traffic stop was initially justified where police observed the defendant lean toward the passenger side of his car and move his arms and the defendant did not comply with officer's command to show his hands and continued to move his arms around inside the car, but that suspicion dissipated after a pat-down search of the defendant revealed no weapons and a canine search of the car revealed no contraband).

Here, although Officer Foster did not observe Parish make any furtive movements, she could have reasonably believed from the other circumstances that Parish was dangerous and could gain immediate control of weapons. Therefore, she could properly search the passenger compartment of Parish's car, limited to those areas in which a weapon might be placed or hidden.

■ We think it goes without saying that a glove box is a place where a weapon could easily be placed or hidden. But here Officer Foster searched inside a *locked* glove box. We must therefore determine whether the locked glove box is part of the passenger compartment that can be searched as part of a protective search. In other words, does the fact that the glove box was locked mean that Parish could not gain immediate control of any weapon hidden therein? Although there appears to be no Indiana case directly on point,[3] the federal courts of appeal, including the Seventh Circuit, have held that a locked glove box may be searched during a protective search of an automobile.

In *United States v. Brown,* 913 F.2d 570, 571–72 (8th Cir.1990), the court concluded that a search of a locked glove box was permissible as part of a protective search where the police had a reasonable suspicion that the occupants of the car were armed and dangerous drug dealers. The court reasoned that "individuals who are allowed to return to their vehicle after a Terry investigation have immediate access to the area of the glove compartment." *Id.*

Similarly, in *United States v. Holifield,* 956 F.2d 665, 667–69 (7th Cir.1992), the court held that the search of a locked glove box during a protective search of the passenger compartment of a vehicle was proper where the driver, who had been stopped for speeding, got out of his car and approached the police in an "aggressive, boisterous manner." The court reasoned that the search was proper because, following a traffic stop, the occupants of the car would eventually return to the car and have ready access to the items in the glove box,

**3.** Although we have found no Indiana case involving searches of a glove box as part of a protective search, our courts have, in cases prior to *Arizona v. Gant,* —— U.S. ——, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), allowed searches of glove boxes as part of a search incident to arrest. *See Crayton–Howell v. State,* 663 N.E.2d 227, 229 (Ind.Ct.App.1996) (noting that when a police officer made a lawful custodial arrest of the occupant of an automobile, the officer could make a contemporaneous search of the passenger compartment of the vehicle and examine the content of any containers found in the compartment, including a glove box); *see also Walker v. State,* 527 N.E.2d 706, 708–10 (Ind.1988) (concluding that warrantless search of a box attached to the underside of the defendant's van was permissible where the police had reasonable suspicion to stop the defendant and probable cause to believe that he was armed).

or could even have broken free from the officer's custody and returned to the car and retrieve a weapon from the glove box. *Id.*

And in *United States v. Palmer,* 360 F.3d 1243, 1247 (10th Cir.2004), the police opened a locked glove box during a protective search of a vehicle after learning of the defendant's criminal history and "dangerousness," and also observed the defendant making furtive movements inside the vehicle during a pursuit. On appeal, the court held that the search of the locked glove box was proper because the defendant would have had access to any weapon therein after a citation had been issued and the defendant had been released to go back to the car. *Id.*

These cases make a valid point: even if removed from the car during a traffic stop, the occupants of the car are typically allowed to return to the car after any citation is issued, and once back inside the car, the occupants have easy access to even a locked glove box.[4] Indeed, here Officer Foster explained that she searched the glove box to ensure that there were no weapons within Parish's reach if he returned to his car. *See* Suppression Tr. p. 11. And she further stated that she was able to unlock the glove box in only a few seconds. *Id.* at 12. Following the federal cases cited above, we conclude that, under the Fourth Amendment, the warrantless search of Parish's locked glove box was permissible as part of a protective search of places in the passenger compartment of the vehicle where a weapon could be placed or hidden.[5]

Parish also argues that the search of his car was a pretext for searching for evidence of the crimes for which he was a suspect. He claims that he otherwise would have been immediately arrested based upon the weapons and contraband found during the search. To be sure, the purpose of a protective search is to allow an officer to investigate without fear for her safety or the safety of others, not to discover evidence of a crime. *Jackson,* 785 N.E.2d at 620. But even if a stop is pretextual, a subsequent search is not un-unconstitutional if the stop itself is lawful. *State v. Dodson,* 733 N.E.2d 968, 970 (Ind. Ct.App.2000); *see also State v. Voit,* 679 N.E.2d 1360, 1362–63 (Ind.Ct.App.1997) (subsequent consensual search was valid where the police stopped defendant for speeding even though primary motivation of police in stopping defendant's vehicle was to investigate drug activity).

Here, Parish admits that the initial traffic stop was valid, and we have concluded that the subsequent protective search was justified by Officer Foster's reasonable fear for her safety. Thus, even if Officer Foster had ulterior, pretextual motives, this does not by itself render the protective sweep unconstitutional. Although we may question why the police allowed Parish to leave the stop with only a minor traffic citation despite discovery of marijuana, scales, and a handgun in the locked glove box, this does not change our ultimate conclusion that the protective search of that glove box was permissible under the Fourth Amendment.[6]

Affirmed.

---

4. This is unlike a search incident to arrest where a driver is arrested and secured. *See Arizona v. Gant,* — U.S. —, 129 S.Ct. 1710, 1719, 173 L.Ed.2d 485 (2009) (holding that search of defendant's car incident to arrest was impermissible under the Fourth Amendment where defendant had been handcuffed and secured prior to search and was therefore "not within reaching distance of his car at the time of the search.").

5. Parish makes no argument regarding Article 1, Section 11 of the Indiana Constitution.

6. Parish makes no argument that the holding in *Long* was altered by the holding in *Gant.* Still, we note that *Gant* cited *Long* without

BRADFORD, J., concur.

RILEY, J., dissents with separate opinion.

RILEY, Judge, dissenting with separate opinion.

I respectfully dissent from the majority's conclusion that the warrantless protective search was permissible under the Fourth Amendment and the evidence discovered pursuant to the search was properly admitted.

It is well established that when a search is conducted without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search. *Malone v. State*, 882 N.E.2d 784, 786 (Ind.Ct.App. 2008). One such exception is that a police officer may briefly detain a person for investigatory purposes without a warrant or probable cause if, based upon specific and articulable facts together with rational inferences from those facts, the official intrusion is reasonably warranted, and the officer has reasonable suspicion that criminal activity may be afoot. *Washington v. State*, 922 N.E.2d 109, 111 (Ind.Ct.App. 2010). In addition to detainment, *Terry* permits a reasonable search for weapons for the protection of the police officer, where the officer has reason to belief that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. *Malone*, 882 N.E.2d at 786–87 (citing *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

However, in its recent decision of *Arizona v. Gant*, —— U.S. ——, 129 S.Ct. 1710, 1723–24, 173 L.Ed.2d 485 (2009), the United States Supreme Court significantly limited the ability of law enforcement to

questioning its continuing validity. *See Gant,* 129 S.Ct. at 1721 (quoting *Long,* 463 U.S. at

search a vehicle and brought the nature of a vehicle search back to its original limited rationale:

> Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies.

In *Gant,* Gant and his two passengers had been removed from his car, handcuffed, and placed in separate police cars. *Id.* The Supreme Court held that concern for officer safety could not justify searching Gant's car because no suspect could have accessed any weapon that might be in his car. *Id.*

Here, the officers conducted a warrantless search of Parish's car after a traffic stop based on the officers' belief that Parish was the suspect in several shootings and was armed. While exiting his car, Parish did not make any furtive movements and appeared to be cooperative with the officers' orders. After searching the vehicle and a locked glove box, the officers discovered a revolver, a small scale, and marijuana. Nevertheless, despite the presence of a weapon, the officers simply issued a citation and let him go.

While we are dealing here with a traffic stop, rather than an arrest, the fact remains that Parish, like Gant, was removed from his car and handcuffed. Accordingly, because Parish no longer posed a threat, the officers cannot justify a search of his

1049, 103 S.Ct. 3469).

car based on a concern for officer safety. The justification of the search diminishes even more in light of the fact that the officers released Parish after the search. A more prudent course of action for the officers would have been to take Parish into custody as a "suspect in several shootings" and then request a search warrant for his car. *See* Op. p. 350.

As such, pursuant to the directives in *Gant,* I would grant Parish's motion to suppress the evidence of the illegal search and remand for a new trial.