## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 21 2019, 10:30 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael C. Borschel
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Gary Tindall,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

March 21, 2019

Court of Appeals Case No.
18A-CR-1487

Appeal from the Marion Superior Court

The Honorable Amy Barbar, Magistrate

Trial Court Cause No.
49G02-1708-F5-31427

**Tavitas, Judge.**

## Case Summary

[1] Gary Tindall appeals his conviction for carrying a handgun without a license, a Level 5 felony. We reverse and remand.[1]

## Issue

[2] Tindall raises one issue on appeal, which we restate as whether the trial court abused its discretion by admitting evidence found during a warrantless search of Tindall's vehicle.

## Facts

[3] On August 24, 2017, at approximately 3:00 a.m., Officer Justin Keehn with the Indianapolis Metropolitan Police Department was on Massachusetts Avenue, approaching the 34th Street and Arlington Avenue intersection when he observed a silver Chevy Tahoe run a red light. Officer Keehn initiated a traffic stop.

[4] Before exiting his vehicle, Officer Keehn ran the license plate of the vehicle and determined that the vehicle was registered to Tindall and his mother. Officer Keehn approached Tindall's vehicle on the driver's side. Officer Keehn asked Tindall for his driver's license; however, Tindall was only able to produce an Indiana identification card. Tindall was the sole occupant of the vehicle.

---

[1] Oral argument was held in this matter on February 5, 2019, at Andrean High School in Merrillville. We thank counsel for their presentations and Andrean High School for its hospitality.

[5] Officer Keehn returned to his patrol car and ran Tindall's information through the BMV database; he determined that Tindall's driving status was suspended. While Officer Keehn was processing Tindall's information, he observed Tindall reach across the car toward the glovebox for approximately thirty seconds to one minute.[2] Officer Keehn had not yet asked Tindall for his registration or insurance information. After observing Tindall's movements toward the glovebox, Officer Keehn called for backup, and additional officers arrived shortly thereafter. Officer Keehn then asked Tindall to step out of his vehicle.

[6] After Tindall exited his vehicle, Officer Keehn completed a pat down of Tindall. Officer Keehn then instructed Tindall to stand at the rear of Tindall's vehicle, in front of Officer Keehn's vehicle, with the other officers. Officer Keehn conducted a protective sweep of the inside front of Tindall's vehicle. Because the glovebox was locked, Officer Keehn took the keys out of the ignition and unlocked the glovebox.[3] There, Officer Keehn located a nine millimeter handgun with an extended magazine. Tindall did not have a license for the firearm. After finding the firearm in the glovebox, Officer Keehn noticed a holster on the front passenger seat.

---

[2] There is some discrepancy in the record, however, as Officer Keehn's probable cause affidavit states that he saw Tindall reach towards the glovebox area when he first approached the vehicle.

[3] Notably, Officer Keehn turned off the vehicle in order to access the glovebox; however, Officer Keehn could not recall whether Tindall turned off the vehicle while leaning over toward the glovebox.

[7] Tindall was charged with Count I, carrying a handgun without a license, a Level 5 felony[4], and Count II, driving while suspended, a Class A misdemeanor.

[8] Prior to trial, Tindall moved to suppress evidence of the handgun found in his vehicle, citing violations of the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution. At the motion to suppress hearing, Officer Keehn provided additional information regarding the traffic stop.[5] Specifically, Officer Keehn stated he asked Tindall if there were any weapons inside the vehicle, which is a routine question for traffic stops. Tindall responded, "not. . . that [I know] of." Motion to Suppress Tr. Vol. II p. 11. Officer Keehn testified he called for backup due to Tindall's statement regarding the gun, and additional reasons including "the time of night, the area, [and Tindall's license] being suspended." *Id.* at 13. Furthermore, Officer Keehn stated: "I did look up a brief criminal history. Those all factored into me asking for a backup to get him out of the vehicle." *Id.* Once Tindall was out of the vehicle, officers advised Tindall he was

---

[4] Tindall was initially charged with carrying a handgun without a license as a Class A misdemeanor; however, because Tindall had been convicted of felony possession of cocaine in the preceding fifteen years, Tindall's charge was increased to a Level 5 felony pursuant to Indiana Code Section 35-47-2-1(e)(2)(B). Tindall and the sentencing order both state the conviction is "felon carrying a handgun"; however, we will continue to refer to Tindall's conviction as "carrying a handgun without [a] license," as the statute does. *See* Appellant's Br. p. 5; *see also* Appellant's App. Vol. II p. 11. Tindall was not convicted under "unlawful possession of firearm by serious violent felon" pursuant to Indiana Code Section 35-47-4-5.

[5] This additional evidence was not presented to the jury.

detained before beginning the pat down of Tindall and the protective sweep of the vehicle.

[9] Following the motion to suppress hearing, the trial court denied the motion and stated:

> The officers testified that [Tindall] made a furtive motion. It was three o'clock in the morning. [Officer Keehn] may have allowed [Tindall] to get back in the car just if – if it was just a suspension. And [Officer Keehn] did notice the – he said that he indicated the brief criminal history of [Tindall], although he didn't tell me what that was, and so I really – I'm not considering that.

*Id.* at 32.

[10] At the jury trial, Tindall's counsel renewed his objection regarding the officer's discovery of the firearm on the same basis as the motion to suppress. Officer Keehn testified at the jury trial that, had he not found the firearm, he likely would have instructed Tindall not to operate the vehicle, but would have returned the vehicle to Tindall, and allowed him to leave with only a warning.

[11] The jury found Tindall guilty of both Count I and Count II.[6] Tindall now appeals.

---

[6] The jury only considered Count I as a Class A misdemeanor. Tindall admitted that he was convicted of possession of cocaine in 2015, and accordingly, Count I was enhanced to a Level 5 felony.

## Analysis

Tindall argues that the officer's warrantless search of the vehicle and, specifically, the locked glovebox violated his rights under the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution. Because Tindall appeals from a completed jury trial, the issue is more appropriately framed as whether the trial court properly admitted the evidence at trial. *Clark v. State*, 994 N.E.2d 252, 259 (Ind. 2013). "The general admission of evidence at trial is a matter we leave to the discretion of the trial court." *Id.* at 259-60. "We review these determinations for abuse of that discretion and reverse only when admission is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights." *Id.* at 260. "'When an appellant's challenge to such a ruling is predicated on an argument that impugns the constitutionality of the search or seizure of evidence, it raises a question of law, and we consider that question de novo.'" *Negash v. State*, 113 N.E.3d 1281, 1288 (Ind. Ct. App. 2018) (quoting *Guilmette v. State*, 14 N.E.3d 38, 40-41 (Ind. 2014)).

### *A. Fourth Amendment*

Tindall first argues that the officer's warrantless search of the locked glovebox violated his rights under the Fourth Amendment to the United States Constitution. The Fourth Amendment to the United States Constitution protects citizens against unreasonable searches and seizures by prohibiting them without a warrant supported by probable cause. U.S. Const. amend. IV. "The fundamental purpose of the Fourth Amendment to the United States

Constitution is to protect the legitimate expectations of privacy that citizens possess in their persons, their homes, and their belongings." *Taylor v. State*, 842 N.E.2d 327, 330 (Ind. 2006).

[14] This protection has been "extended to the states through the Fourteenth Amendment." *Bradley v. State*, 54 N.E.3d 996, 999 (Ind. 2016). "As a deterrent mechanism, evidence obtained in violation of this rule is generally not admissible in a prosecution against the victim of the unlawful search or seizure absent evidence of a recognized exception." *Clark*, 994 N.E.2d at 260. "When a search is conducted without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search." *Bradley*, 54 N.E.3d at 999. "The 'touchstone of the Fourth Amendment is reasonableness,' and reasonableness is measured in objective terms by examining the totality of the circumstances." *Rush v. State,* 881 N.E.2d 46, 50 (Ind. Ct. App. 2008) (quoting *Ohio v. Robinette,* 519 U.S. 33, 39, 117 S. Ct. 417 (1996)).

[15] Officer Keehn stated he discovered the firearm while conducting a "protective sweep." Tr. Vol. II p. 14. The protective sweep exception to the warrant requirement "applies in circumstances that 'include risk of bodily harm or death, aiding a person in need of assistance, protecting private property, or actual or imminent destruction or removal of evidence before a search warrant may be obtained.'" *Rush v. State,* 881 N.E.2d 46, 52 (Ind. Ct. App. 2008) (quoting *Harless v. State,* 577 N.E.2d 245, 248 (Ind. Ct. App. 1991)). More specifically, "an officer with a reasonable suspicion that a motorist is dangerous

and may be able to gain immediate control of weapons may conduct a protective search of the passenger compartment of the vehicle without a warrant." *Parish v. State,* 936 N.E.2d 346, 349 (Ind. Ct. App. 2010) (citing *Michigan v. Long,* 463 U.S. 1032, 1049-50, 103 S. Ct. 3469 (1983)).

[16]　Tindall argues that the protective sweep was improper under the Fourth Amendment because officers had already detained Tindall, which "alleviat[ed] any Officer Safety concerns supporting the decision to search the vehicle[.]" Appellant's Br. p. 13. Tindall also argues that it was reasonable to believe that Tindall was extracting his registration and other paperwork from the glovebox when Officer Keehn observed this furtive movement, citing *Anderson v. State,* 64 N.E.3d 903 (Ind. Ct. App. 2016). In *Anderson,* Anderson was pulled over by an officer after the officer ran Anderson's license plate and discovered that Anderson's driving privileges were suspended and that Anderson had an outstanding warrant for strangulation. *Anderson,* 64 N.E.3d at 904. Once the officer determined Anderson was indeed the driver, the officer instructed Anderson to step out of the vehicle. *Id.* Anderson did so after removing his jacket, which seemed unusual to the officer. *Id.* The officer handcuffed Anderson, then returned to Anderson's car and searched it before it was towed. *Id.* When the officer picked up Anderson's jacket, he noticed it was heavy and found a loaded handgun in the pocket. *Id.* Anderson did not have a license to carry the handgun. *Id.*

[17]　A panel of our court concluded that the search was unlawful under the Fourth Amendment. The *Anderson* court concluded that "the search of a passenger

compartment of a car, incident to the arrest of the car's driver and sole occupant, was not justified when the driver 'could not have accessed his car to retrieve weapons or evidence at the time of the search.'" *Id.* at 906 (citing *Arizona v. Gant,* 556 U.S. 332, 335, 129 S. Ct. 1710 (2009)).

[18] The State argues here that Officer Keehn articulated many reasons for the protective sweep, including: (1) the late hour; (2) the location; (3) Tindall's "suspicious response" to the inquiry about whether weapons were in the vehicle; (4) Tindall's suspended driving status; and (5) Tindall's movements toward the glovebox. Appellee's Br. p. 12. The State argues the protective sweep was necessary because Officer Keehn wanted to "look[] for weapons that could harm [him] if [he] put [Tindall] back in the vehicle." *Id.*

[19] Based on the facts of this case, we agree with Tindall that the warrantless search of the glovebox was not justified. Tindall was out of the vehicle and standing with the other officers who had arrived on the scene when Officer Keehn searched Tindall's vehicle. Officer Keehn had already conducted a pat down of Tindall and determined that Tindall did not have any weapons on his person. While the State contends that Officer Keehn needed to conduct a protective sweep because he planned to return the vehicle to Tindall, under this factual scenario, a protective sweep was not lawful. Officer Keehn testified that he was not going to allow Tindall to drive the vehicle due to Tindall's suspended driver's license. Based on these facts, a protective sweep of the locked glovebox was not permissible because the locked glovebox was not easily accessible, and Tindall could not have gained immediate control of the weapon.

[20] The State relies on *Parish v. State,* 936 N.E.2d 346 (Ind. Ct. App. 2010). In *Parish,* Parish, who was believed to be involved in a recent shooting, failed to use his turn signal while turning his car. *Parish,* 936 N.E.2d at 347-48. After recognizing Parish, the officer who initiated the traffic stop called for backup, approached the vehicle, and instructed Parish to step out of the vehicle. *Id.* at 348. Parish, whom officers believed to be armed, did not initially comply, but he eventually exited the vehicle. *Id.* Officers then handcuffed Parish and patted him down. *Id.* Simultaneously, another officer searched "wherever [she] could reach" in Parish's vehicle. *Id.* Officers tried to open the glovebox, which was locked. *Id.* "Immediately" and "without even thinking," the officer pulled the key from the ignition and unlocked the glovebox. *Id.* There, officers found a firearm. *Id.* Subsequently, for some unknown reason, officers only confiscated the firearm, wrote Parish a citation for the traffic violation, and allowed Parish to drive away. *Id.*

[21] A panel of our court concluded that the search of the glovebox did not violate the Fourth Amendment, because:

> At the time of the traffic stop, Parish was a suspect in several shootings, including a homicide, and the police were on high alert that Parish was armed. Indeed, a "gang unit" officer had warned other officers that Parish had threatened to kill the next police officer he encountered and was even taking drugs in preparation for a shootout with the police. In addition, when Officer Foster first approached Parish's car and told him to step out of the vehicle, Parish did not immediately comply. He instead asked Officer Foster why she did not want to see his driver's license and registration. Only when Officer Foster

> explained to Parish that she knew who he was and again told him to step out of the car did he slowly take off his seat belt and exit the car.

*Id.* at 350. The panel found that a reasonably prudent person in the officer's position would believe her safety was in danger, and the officer was "therefore justified in searching the passenger compartment of Parish's car, limited to those areas in which a weapon might be placed or hidden." *Id.*

[22] The circumstances of this case are starkly different to the facts in *Parish*. Unlike Parish, Tindall was not a person officers knew to be armed and dangerous. Further, Parish did not want to comply with the officers' instructions, whereas here, there is no evidence that Tindall did not comply with the officers' instructions. Moreover, Officer Keehn had an independent basis to arrest Tindall because Tindall was driving without a license.

[23] As the State articulated at the oral argument, the protective sweep led to the arrest as the outcome of the traffic stop. After identifying the events that Officer Keehn articulated as constituting reasonable suspicion, Officer Keehn could have arrested Tindall for his driving without a license violation, impounded the vehicle, and performed an inventory search. Instead, Officer Keehn appeared to simply conduct a search under the purview of a protective sweep in order to discover evidence of criminal activity. The State may not now justify the warrantless search based on the alleged need for a protective sweep. *See State v. Estep,* 753 N.E.2d 22, 28 (Ind. Ct. App. 2001) (affirming the trial court's finding that the protective sweep "exceeded the spirit of the limited grant to search").

[24] The facts of this case are also starkly different from other opinions of this court, or our Supreme Court, where a protective sweep was found to be reasonable. *See Taylor v. State*, 929 N.E.2d 912, 920 (Ind. Ct. App. 2010) (finding a protective sweep of a home valid when officers responded to a call that three juveniles had fired a shot and one of the boys exclaimed, "it wasn't us with the gun," indicating another person may be inside the home), *trans. denied; see also Weddle v. State*, 989 N.E.2d 371, 377 (Ind. Ct. App. 2013) (finding the protective sweep of the home permissible when officers believed more than one person was hiding in the back of the home, concluding that "police officers may search rooms that are not immediately adjacent to the area of arrest when there is reasonable suspicion that the rooms might contain a person who is hiding and may jeopardize officer safety"), *trans. denied*.

[25] The contents of the locked glovebox were not immediately accessible to Tindall and, therefore, not within the bounds of a protective sweep. *See Merchant v. State*, 926 N.E.2d 1058, 1065 (Ind. Ct. App. 2010) (finding that, in a protective sweep as part of a search incident to arrest, the officers' protective sweep of the passenger compartment was within the bounds of the Fourth Amendment because "Merchant was within reaching distance of the passenger compartment of the vehicle"), *trans. denied*. Accordingly, we find that the search was impermissible under the Fourth Amendment, and thus, the trial court abused its discretion in admitting the evidence found during the illegal search.

## B. Indiana Constitution

[26] Tindall also challenges the search as improper under Article 1, Section 11 of the Indiana Constitution. The language of Article 1, Section 11 tracks the Fourth Amendment; however, "Indiana has explicitly rejected the expectation of privacy as a test of the reasonableness of a search or seizure." *Litchfield v. State,* 824 N.E.2d 356, 359 (Ind. 2005). Instead, the legality of a search "turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances." *Id.* Reasonableness is determined by balancing: (1) the degree of concern, suspicion, or knowledge that a violation has occurred; (2) the degree of intrusion imposed by the search; and (3) the extent of law enforcement needs. *Id.* at 361. In other words, "[a]lthough its text mirrors the federal Fourth Amendment, we interpret Article 1, Section 11 of our Indiana Constitution separately and independently." *State v. Crager*, 113 N.E.3d 657, 663 (Ind. Ct. App. 2018), *trans. denied.*

[27] Tindall argues that, applying the *Litchfield* factors, the warrantless search was improper; we agree. First, the degree of concern, suspicion, or knowledge that a violation had occurred was low. It is reasonable to believe that Tindall was reaching for his registration information, even if Officer Keehn had not yet asked for this information. Further, Tindall's response regarding whether weapons were in the vehicle was not necessarily objectively suspicious, considering that Tindall was not the sole owner of the vehicle. Officer Keehn testified that he was aware that Tindall was not the sole owner of the vehicle,

and that Tindall's mother was also listed on the vehicle's registration information. This first factor weighs against the legality of the search.

[28] The degree of intrusion was high. The glovebox was locked, and the keys were in the ignition. Officer Keehn had to turn off the vehicle in order to access the key to the glovebox and then unlock the glovebox before searching it. *See Conn v. State,* 89 N.E.3d 1093, 1098 (Ind. Ct. App. 2017) ("Our courts have consistently held that when Indiana citizens put mechanisms in place to keep others out, ignoring these obstructions constitutes highly intrusive conduct by law enforcement.") (citing *Carpenter v. State,* 18 N.E.3d 998, 1002 (Ind. 2014)), *trans. denied.* Officer Keehn also turned off Tindall's vehicle in order to access the keys to open the locked glovebox. Accordingly, the degree of intrusion was high, and this factor weighs against the legality of the search.

[29] Finally, with regard to law enforcement needs, we believe the need at the time of the protective sweep was minimal. Tindall was outside the vehicle, had been patted down, and was standing with other officers at the time of the protective sweep. Tindall was not near the locked glovebox; nor did Tindall have any access to the locked glovebox at that time. Tindall would not have been able to quickly access the locked glovebox under these circumstances, and no longer posed any potential threat to officer safety. As noted above, if officers believed Tindall to still be a threat based on the contents of the vehicle, officers could have arrested Tindall prior to the search for driving without a license. Officers' failure to do so points to the conclusion that law enforcement's need to search

the locked glovebox was minimal, and this factor weighs against the legality of the search.

[30] We understand that Officer Keehn had several factors to consider when he pulled Tindall over at 3:00 a.m. in a high crime area. We also understand Officer Keehn's hesitation with regard to Tindall reaching towards the glovebox without being asked for his registration information. Still, on balance, the *Litchfield* factors weigh in favor of finding that the warrantless search was not justified. The record shows that, of the specific facts Officer Keehn pointed to in support of his decision to conduct a protective sweep, Officer Keehn was aware of at least three of the factors before returning to his patrol car. Officer Keehn also left Tindall in the car for the "[m]aybe three minutes" it took other officers to arrive, even after Officer Keehn had observed Tindall reaching towards the glovebox. Tr. Vol. III p. 60.

[31] In other words, Officer Keehn decided to leave Tindall in his vehicle despite the factors Officer Keehn later used to justify the warrantless search of Tindall's vehicle. Moreover, Tindall was the sole occupant of the vehicle and was not near the locked glovebox at the time of the search. Accordingly, the totality of the circumstances demonstrate that the search was impermissible under Article 1, Section 11 of the Indiana Constitution, and thus, the trial court abused its discretion in admitting the evidence found during the illegal search.

## Conclusion

[32] The warrantless search of Tindall's locked glovebox was impermissible under the Fourth Amendment and Article 1, Section 11 of the Indiana Constitution. The trial court, therefore, abused its discretion in admitting evidence found during the impermissible search. Accordingly, we reverse and remand.

[33] Reversed and remanded.

Vaidik, C.J., and Robb, J., concur.