**Melvin WASHINGTON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0907–CR–649.

Court of Appeals of Indiana.

March 4, 2010.

Sakinna Thomas, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Stephen Tesmer, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

Melvin Washington brings this interlocutory appeal of the trial court's denial of his motion to suppress evidence discovered during a search of his automobile. Although he contends that the search violated both the Fourth Amendment to the United States Constitution and Article 1, Section 11 on the Indiana Constitution, we find the following issue dispositive: whether the warrantless search of Washington's vehicle to find a handgun that Washington admitted he had and for which he possessed a valid permit, violated the Fourth Amendment when the officer lacked an articulable basis of concern for officer safety.

We reverse.

## FACTS AND PROCEDURAL HISTORY

On September 17, 2008, at approximately 12:30 a.m., Indianapolis Metropolitan Police Officer Danny Reynolds was on patrol on the north side of Indianapolis when he saw a car travelling on the road with one of its headlights not working. Officer Reynolds activated his emergency lights, initiated a traffic stop, and approached the car to speak with the driver, later identified as Washington. As a matter of his own practice, the officer inquired as to whether Washington had any weapons or guns in the car that the officer "should be aware of." *Tr.* at 12. Washington informed Officer Reynolds that he did have a handgun, and it was located beneath the driver's seat. He also informed the officer that he had a valid license to carry the handgun. Officer Reynolds had Washington step out of the car and placed him in handcuffs so that Officer Reynolds could safely secure the handgun. The officer

directed Washington to a nearby curb while he recovered the gun.

Because he did not know the exact orientation of the weapon under the seat, and to prevent accidental discharge, Officer Reynolds shined his flashlight under the driver's seat to find the handgun. As he did so, Officer Reynolds observed a baggie containing what he recognized to be marijuana next to the handgun. After retrieving the baggie and handgun, Officer Reynolds learned that Washington did indeed have a valid handgun permit. Officer Reynolds issued Washington a summons to appear in court, unloaded the handgun, and put it in the trunk of the car before releasing Washington.

On November 12, 2008, the State charged Washington with possession of marijuana as a Class A misdemeanor and failure to have proper headlamps, a Class C infraction. On April 29, 2009, Washington moved to suppress the marijuana found in his car. On May 18, 2009, after hearing evidence and reviewing briefs from both parties, the trial court denied Washington's motion to suppress and granted him permission to file an interlocutory appeal. This court accepted jurisdiction of Washington's interlocutory appeal on August 3, 2009; Washington now appeals.

### DISCUSSION AND DECISION

 We review the denial of a motion to suppress similar to claims challenging the sufficiency of the evidence. *Love v. State*, 842 N.E.2d 420, 424 (Ind.Ct.App. 2006). We do not reweigh the evidence or judge the credibility of the witnesses. *Burkett v. State*, 785 N.E.2d 276, 278 (Ind. Ct.App.2003); *Divello v. State*, 782 N.E.2d 433, 436 (Ind.Ct.App.2003), *trans. denied.* We consider the evidence most favorable to the trial court's ruling and any uncontested evidence favorable to the defendant.

*Love,* 842 N.E.2d at 424. We will affirm if there is substantial evidence of probative value to support the trial court's decision. *Malone v. State*, 882 N.E.2d 784, 786 (Ind. Ct.App.2008).

Washington argues that the trial court improperly denied his motion to suppress. He contends that the search of his car was unreasonable and violated the Fourth Amendment to the United States Constitution. Washington alleges that, because he was completely cooperative with Officer Reynolds and made no furtive movements, the officer had no articulable reasons to believe Washington was dangerous. Therefore, absent a reasonable suspicion that Washington was dangerous or might access the car to gain immediate control of the weapon, Officer Reynolds' search of the car was unreasonable.

 The Fourth Amendment to the United States Constitution protects an individual's privacy and possessory interests by prohibiting unreasonable searches and seizures. *Howard v. State*, 862 N.E.2d 1208, 1210 (Ind.Ct.App.2007). Generally, a search warrant is a prerequisite to a constitutionally proper search and seizure. *Halsema v. State*, 823 N.E.2d 668, 676 (Ind.2005). When a search is conducted without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search. *Malone*, 882 N.E.2d at 786. One such exception is that a police officer may briefly detain a person for investigatory purposes without a warrant or probable cause if, based upon specific and articulable facts together with rational inferences from those facts, the official intrusion is reasonably warranted, and the officer has reasonable suspicion that criminal activity "may be afoot." *Moultry v. State*, 808 N.E.2d 168, 170–71 (Ind.Ct.App. 2004) (citing *Terry v. Ohio*, 392 U.S. 1,

21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

▮▮▮ "In addition to detainment, *Terry* permits a reasonable search for weapons for the protection of the police officer, where the officer has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." *Malone*, 882 N.E.2d at 786–87 (citing *Terry*, 392 U.S. at 27, 88 S.Ct. 1868). "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.*

Here, because a warrant was not obtained to search for the handgun in Washington's car, it is necessary to determine if the search was justified under an exception. The State contends that Officer Reynolds conducted a search for the handgun to ensure officer safety. As we previously recognized in *Malone:*

> Officer safety is of paramount importance. Police officers are daily placed in difficult and dangerous situations, some of which are life threatening. The law has to provide protections for such officers. At the same time, in a free society there must be a reasonable basis for a warrantless search of our persons and homes; hence, our constitutional protections against unreasonable searches and seizures. Between these extremes, courts engage in a very difficult undertaking balancing these competing values and determining where the line separating the reasonable and unreasonable should be drawn.

*Id.* at 787.

In *Malone*, the police were called to a home on a report of someone standing on the front porch holding a shotgun. *Id.* at 786. When the police arrived, they encountered defendant and others on the porch, but no shotgun was present at that time. *Id.* The officers spoke with those present and told them that, although the display of a shotgun was not illegal, it may upset the neighbors. *Id.* When defendant announced he was going inside, an officer observed a "metal glint" on defendant's person and shouted "gun." *Id.* A gun was recovered from defendant's waistband, and it was subsequently determined that he had a prior felony conviction, which made possession of a handgun illegal. *Id.* Defendant moved to suppress the handgun, which the trial court denied. *Id.* On appeal, we held that the trial court had improperly denied the motion to suppress and that the seizure of the weapon was illegal where there was an absence of an articulable basis that there was a legitimate concern of officer safety or a belief that a crime had been committed or was being committed. *Id.* at 787. Prior to the seizure of the gun, the officers had not expressed any concerns for officer safety and defendant had been respectful and not threatened the officers in any way. *Id.* Further, the officers had no information that defendant had a prior felony conviction, which made possessing a handgun illegal, or that any other crime had been or was being committed. *Id.*

In the present case, prior to the search for the handgun, Officer Reynolds did not express any concerns for officer safety. He had initiated a traffic stop on Washington because one of Washington's headlights was not working. Officer Reynolds approached the driver's side of the car to speak with Washington. As a matter of his own practice, the officer inquired as to whether Washington had any weapons or guns in the car, and Washington replied that he had a handgun, which was located underneath the driver's seat. Washington also informed Officer Reynolds that he had

a valid permit for the handgun. Although Washington admitted that a handgun was present inside of the car, he was at all times totally cooperative with Officer Reynolds. The testimony at the suppression hearing indicated that, during the traffic stop, Washington made no furtive movements, answered the officer's questions, and showed no disrespect to the officer. At the time he searched for the handgun, Officer Reynolds had no information that any crime or violation of law had been or was about to be committed, except for the inoperable headlight infraction. Further, at the suppression hearing, Officer Reynolds did not testify that he had any specific concern for officer safety during his traffic stop of Washington. He merely testified that, as a matter of general practice, he inquired as to whether Washington had any weapons, and when Washington stated he had a handgun, Officer Reynolds searched under the driver's seat to retrieve it. As in *Malone*, we conclude that in the absence of an articulable basis that either there was a legitimate concern for officer safety or a belief that a crime had been or was being committed, the search of Washington's car for a handgun was not justified. Here, because neither of these conditions was satisfied, the search was illegal, and the trial court should have suppressed the evidence.

Reversed.

DARDEN, J., concurs.

MAY, J., concurs in result with separate opinion.

MAY, Judge, concurring in result.

While I concur with the majority's result, I would reach that result with a slightly different analysis and, thus, I write separately to explain.

Last year, the United States Supreme Court held:

Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies.

*Arizona v. Gant*, —— U.S. ——, 129 S.Ct. 1710, 1723–24, 173 L.Ed.2d 485 (2009). Gant and his two passengers had been removed from his car, handcuffed, and placed in separate police cars. The Court held concern for officer safety could not justify searching Gant's car because no suspect could have accessed any weapon that might be in his car. Therefore, drugs found in the car had to be suppressed.

While we are dealing here with a traffic stop, rather than an arrest, the fact remains that Washington, like Gant, was removed from his car and handcuffed. Accordingly, Washington's statement there was a gun under his seat simply could not justify a search of his car based on concern for officer safety. *See id.*

I whole-heartedly concur with the majority's sentiment that "[o]fficer safety is of paramount importance." *See* Op. at 112 (quoting *Malone*, 882 N.E.2d at 787). However, *Gant* created a rule that relieves all of us from the burden of determining whether subjective facts (such as cooperation, respectfulness, and furtive movements) create "an articulable basis" that a search is necessary for officer safety. *Cf. Malone*, 882 N.E.2d at 787. Such determinations cannot be easy for police officers amidst the ever-changing environment of a traffic stop, and I know they are difficult for judges who simply cannot know what was happening "in the moment." Thus, it

114

seems to me, the rule articulated in *Gant* simultaneously increases protection for two important interests: the safety of our police officers and the constitutional rights of our citizens. As we all too frequently must choose between competing interests when deciding cases, I believe we ought to take full advantage of this opportunity.

I would decline to determine whether the State violated Washington's Fourth Amendment rights based on his cooperation, respectfulness, or furtive movement. Nevertheless, like the majority, I would reverse the denial of Washington's motion to suppress, and therefore I concur in result.