**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**ELLEN F. HURLEY**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW R. FALK**
Deputy Attorney General
Indianapolis, Indiana

FILED

Apr 25 2012, 9:17 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| D.M., | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | ) No. 49A02-1109-JV-885 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Gary Chavers, Judge Pro Tempore
The Honorable Geoffrey Gaither, Magistrate
Cause No. 49D09-1107-JD-1829

**April 25, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

D.M. appeals from his adjudication as a delinquent child for carrying a handgun without a license,[1] which would be a Class A misdemeanor if committed by an adult. He raises the following restated issue: whether the juvenile court abused its discretion when it admitted evidence found in D.M.'s possession because he contends the police lacked reasonable suspicion to conduct an investigatory stop of him under the Fourth Amendment to the United States Constitution.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On July 16, 2011, Indianapolis Metropolitan Police Department Officer Michael Mann ("Officer Mann") received a dispatch to 556 North Parker Avenue in Indianapolis, Indiana based on a call to police from Melinda Betts ("Betts"). Betts told police she had received information that D.M. was located at that address and was in possession of a .25 caliber handgun that he was showing off to others at the address. Betts informed the police that this handgun had been stolen from her home during a burglary. D.M. was described as "a black male . . ., approximately [five feet, ten inches in height], thin build, a short, curly afro." *Tr*. at 2.

Officer Mann and a second officer responded to the address, with Officer Mann approaching the front of the house, and the other officer going to the back door for containment. There were several individuals in the front area of the house, and Officer Mann asked them if anyone had seen D.M. Several individuals replied, "no." *Id*. at 3.

---

[1] *See* Ind. Code § 35-47-2-1.

Officer Mann then looked to Antonio Bishop ("Bishop"), who he knew resided at the address, and asked for consent to search the house for D.M. Bishop looked at Nadine Jenkins ("Jenkins"), who also lived at the address, and Officer Mann repeated his request to Jenkins, who gave her consent. Officer Mann asked Jenkins to escort him through the house, and she agreed.

Officer Mann followed Jenkins up the stairs to the second floor. At the top of the stairs, Jenkins looked down a hallway to her left and said, "[D.M.,] the police want you." *Id.* at 5. Officer Mann looked around the corner and saw an individual who matched the description of D.M. that the officer had received from dispatch. D.M. walked toward Officer Mann. The officer placed D.M. in custody and asked who he was, to which he responded he was D.M. *Id.* at 6. Officer Mann took D.M. downstairs and handed him over to Officer Ross Allison ("Officer Allison"). Officer Allison, who testified he had been trained to pat down a suspect whenever the suspect is transferred from one officer to another, performed a pat down search of D.M. *Id.* at 25. When Officer Allison touched D.M.'s left, front pants pocket, he felt what he knew to be a small handgun. Officer Allison retrieved the handgun and discovered it to be a small, silver and black, .25 caliber semi-automatic handgun.

During this time, Officer Mann had been talking with Jenkins and asking for her consent to search the home for a handgun. While Officer Mann was speaking with Jenkins, Officer Allison informed Officer Mann that he had found the handgun on D.M. Officer Mann contacted Betts to find out more about the burglary and the stolen handgun. Officer Mann also requested that the handgun discovered in D.M.'s possession be run

3

through control to determine if it came back as being stolen, but it came back as not being reported stolen.[2]

The State filed a delinquency petition alleging that D.M. committed dangerous possession of a firearm, which would be a Class A misdemeanor if committed by an adult, and carrying handgun without a license, which would be a Class A misdemeanor if committed by an adult. A fact-finding hearing was held on August 11, 2011. During this hearing, D.M. moved to suppress any evidence resulting from the search, arguing that it violated D.M.'s rights under the Fourth Amendment to the United States Constitution and Article I, section 11 of the Indiana Constitution. The trial court denied the motion, and D.M. made a continuing objection to the admission of the evidence. At the conclusion of the fact-finding hearing, the juvenile court entered a true finding on only the carrying a handgun without a license count. *Id*. at 27. After a dispositional hearing, the juvenile court ordered that D.M. be placed on probation with a suspended commitment to the Indiana Department of Correction and with special requirements, including that D.M. be placed on electronic monitoring for ninety days. D.M. now appeals.

## DISCUSSION AND DECISION

D.M. initially challenged the admission of the handgun through a motion to suppress. However, he is appealing from a completed delinquency hearing, and therefore, the issue is appropriately framed as whether the trial court abused its discretion by admitting the evidence at the fact-finding hearing. *A.M. v. State*, 891 N.E.2d 146,

---

[2] Upon further investigation, it was determined that, although a police report had been made in reference to the handgun stolen from Betts, Betts did not have the proper information, such as the serial number, to enter the handgun into "NCIC" as a stolen gun. *Tr*. at 22.

4

148-49 (Ind. Ct. App. 2008) (citing *Collins v. State,* 822 N.E.2d 214, 218 (Ind. Ct. App. 2005), *trans. denied.*), *trans. denied.* "Our standard of review on the admissibility of evidence 'is essentially the same whether the challenge is made by a pre-trial motion to suppress or by trial objection.'" *Id.* A trial court is afforded broad discretion in ruling on the admissibility of evidence, and we will reverse such a ruling only upon a showing of an abuse of discretion. *S.G. v. State*, 956 N.E.2d 668, 674 (Ind. Ct. App. 2011) (citing *Bentley v. State,* 846 N.E.2d 300, 304 (Ind. Ct. App. 2006), *trans. denied*), *trans. denied.* An abuse of discretion occurs when a decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.* In making this determination, this court does not reweigh evidence and considers conflicting evidence in a light most favorable to the trial court's ruling. *Id*. (citing *Cole v. State,* 878 N.E.2d 882, 885 (Ind. Ct. App. 2007)).

D.M. argues that the juvenile court abused its discretion when it admitted the handgun discovered by police during a pat down search of his person. He contends that the pat down search was performed in violation of the Fourth Amendment to the United States Constitution because the police lacked reasonable suspicion to justify an investigatory stop and pat down search. D.M. asserts that the police did not have reasonable suspicion because the information known to the police at the time was based on an anonymous tip.

The Fourth Amendment to the United States Constitution protects an individual's privacy and possessory interests by prohibiting unreasonable searches and seizures. *Washington v. State*, 922 N.E.2d 109, 111-12 (Ind. Ct. App. 2010). Generally, a search

5

warrant is a prerequisite to a constitutionally proper search and seizure. *Id*. (citing *Halsema v. State,* 823 N.E.2d 668, 676 (Ind. 2005)). When a search is conducted without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search. *Malone v. State,* 882 N.E.2d 784, 786 (Ind. Ct. App. 2008). One such exception is that a police officer may briefly detain a person for investigatory purposes without a warrant or probable cause if, based upon specific and articulable facts together with rational inferences from those facts, the official intrusion is reasonably warranted, and the officer has reasonable suspicion that criminal activity "may be afoot." *Moultry v. State,* 808 N.E.2d 168, 170–71 (Ind. Ct. App. 2004) (citing *Terry v. Ohio,* 392 U.S. 1, 21–22 (1968)).

"Reasonable suspicion is a somewhat abstract concept, not readily reduced to a neat set of legal rules." *L.W. v. State*, 926 N.E.2d 52, 55 (Ind. Ct. App. 2010) (internal quotations omitted). When making a reasonable suspicion determination, reviewing courts examine the totality of the circumstances of the case to see whether the detaining officer had a particularized and objective basis for suspecting legal wrongdoing. *Id.* The reasonable suspicion requirement is met where the facts known to the officer, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe criminal activity has occurred or is about to occur. *Id.* It is well settled that reasonable suspicion must be comprised of more than an officer's general hunches or unparticularized suspicions. *Id.*

Here, Officer Mann received a dispatch, which specifically named D.M. and reported that he could be located at an exact address, 556 North Parker Avenue, and that

he had been showing off a small, .25 caliber handgun that has been stolen in a recent burglary. The dispatch included a physical description of D.M and stated that the information had been provided by Betts, the victim of the burglary. When Officer Mann arrived at the address, he came in contact with several individuals in the front yard area of the residence and inquired as to whether any of them had seen D.M. or whether D.M. was at the address. The individuals all replied in the negative. Officer Mann then requested consent to search the house from Jenkins, one of residents, which was granted. The officer asked Jenkins to escort him through the house, and when she took him to the second floor, she looked down the hall and said, "[D.M.,] the police want you." *Tr.* at 5. D.M., who matched the description received from dispatch, walked toward Officer Mann. After securing D.M., Officer Mann asked and received D.M.'s verbal confirmation of his identity. Officer Mann escorted D.M. downstairs and gave him to Officer Allison, who performed a pat down search of D.M. for officer safety. During this pat down search, Officer Allison discovered a small, silver and black, .25 caliber semi-automatic handgun.

D.M. argues that the officers did not have reasonable suspicion to stop him and perform a pat down search because the information they relied upon came from an anonymous tip. However, the tip the officers received was not anonymous; it was provided by Betts, who was the victim of a burglary and who believed that D.M. was in possession of her handgun, which had been stolen during the burglary. Although nothing in the record indicated how Betts received this information, we believe that her tip was sufficiently reliable, and the stop was warranted.

"The United States Supreme Court . . . has indicated that while a tip from an

7

identified or known informant may not be sufficient to support a probable cause finding, such tips are sufficiently reliable to justify an investigatory *Terry* stop." *Kellems v. State,* 842 N.E.2d 352, 355 (Ind. 2006) (citing *Alabama v. White,* 496 U.S. 325, 330 (1990) and *Adams v. Williams,* 407 U.S. 143, 146–47 (1972)), *reh'g granted on other grounds.* The Supreme Court has also concluded that tips from identified informants are sufficient to constitute reasonable suspicion to support an investigatory stop because a known or identified informant's "reputation can be assessed and . . . [they may] be held responsible if [their] allegations turn out to be fabricated . . . ." *Id.* (quoting *Florida v. J.L.,* 529 U.S. 266, 270 (2000)). In *Kellems,* our Supreme Court held that while a tip made by a so-called "concerned citizen" has greater indicia of reliability than that made by a professional informant, the ultimate test is "one of the totality of the circumstances." *Id.* at 356. And while a concerned citizen who has identified herself makes herself susceptible to prosecution for false reporting, which "heightens the likelihood of the report's reliability," that is only one factor "bearing on the reasonableness of suspicion." *Id.* at 355–56.

In the present case, the police dispatch was based on information supplied by Betts, who was a concerned citizen and crime victim. Because she had previously been the victim of a crime, a police report had been created that contained the details of the burglary and identifying information of Betts, including presumably her name and address. Therefore, the police were privy to evidence that verified both Betts's identity and her reliability. Such evidence identified Betts in such a way that could place her credibility at risk and subject her to criminal penalties. Further, Betts provided an

accurate description of D.M., as well as his name and the exact address at which he was located, all of which lent additional credibility to the information given to dispatch and allowed the police to corroborate her information independently. Therefore, we conclude that the tip provided by Betts was sufficient to provide the police with reasonable suspicion to conduct an investigatory stop of D.M.

Additionally, the pat down search conducted on D.M. was supported by reasonable suspicion. *Terry* permits an officer "'to conduct a limited search of the individual's outer clothing for weapons if the officer reasonably believes the individual is armed and dangerous.'" *Willis v. State*, 907 N.E.2d 541, 547 (Ind. Ct. App. 2009) (quoting *Howard v. State,* 862 N.E.2d 1208, 1210 (Ind. Ct. App. 2007)). Here, the dispatch contained information that D.M. was showing off a .25 caliber handgun that had been stolen during a burglary. It was therefore reasonable for the officers to suspect that D.M., who matched the description given in the dispatch and had verbally identified himself as D.M., could have a weapon in his possession. Based on the totality of the circumstances of this case, we conclude that reasonable suspicion to justify an investigatory stop and pat down search existed. The juvenile court did not abuse its discretion when it admitted the handgun discovered by police during a pat down search of D.M.

Affirmed.

BARNES, J., and BRADFORD, J., concur.