## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 12 2019, 8:57 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Bradley Keffer
Brooke Smith
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kortney D. Bowers,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

June 12, 2019

Court of Appeals Case No.
18A-CR-1680

Appeal from the Huntington
Superior Court

The Honorable Jennifer E.
Newton, Judge

Trial Court Cause No.
35D01-1709-F2-211

**Altice, Judge.**

# Case Summary

Following a jury trial, Kortney D. Bowers was convicted of Level 2 felony dealing in methamphetamine and Level 6 felony possession of a narcotic. On appeal, Bowers asserts that the trial court abused its discretion when it admitted evidence seized during execution of a search warrant of a vehicle in which Bowers was a passenger, claiming that the evidence was seized in violation of his federal and state constitutional rights. He also claims that the State failed to present sufficient evidence of his intent to deliver methamphetamine.

We affirm.

# Facts & Procedural History

On August 31, 2017, officers with the Huntington Police Department (HPD) obtained a search warrant for a residence on Columbia Street that was the subject of a months-long drug investigation involving several law enforcement agencies including the Allen County Drug Task Force and the Huntington County Sheriff's Department. Law enforcement had been conducting surveillance of the Columbia Street house since June 2017, based on information indicating that an occupant named Clifton Rose was dealing drugs from the house. The search warrant also gave officers permission to search two vehicles, including a white Ford Explorer (the Explorer) driven by James Kuchar. According to information from a confidential informant, Kuchar was known to transport narcotics, and, during the period of surveillance, Kuchar had been seen carrying items in and out of the Columbia Street residence.

[4]     On the morning of September 1, HPD Detectives Cory Boxell and Ty Whitacre, in separate vehicles, intended to execute the search warrant on the Explorer, which was last seen the day before at the Columbia Street address, but after looking there and at Kuchar's mother's house, they did not see it. A detective with the sheriff's department advised that he had located the Explorer in the neighboring town of Andrews, Indiana, so Detectives Boxell and Whitacre traveled to Andrews, still in separate vehicles.[1] Detective Boxell located the Explorer parked at Bowers's house. Kuchar was in the driver's seat, and Detective Boxell watched Bowers exit the residence wearing a "very large" black backpack and walk to the Explorer. *Transcript Vol. 2* at 117. Bowers put the backpack in the back seat and then got in the front passenger seat, and then the Explorer drove away. The two Detectives, along with other law enforcement personnel from several agencies, followed the Explorer throughout the day, observing as it made various stops. At a residence in Fort Wayne, a third individual, later identified as Adam, got in the back seat of the Explorer. Kuchar, Bowers, and Adams then went to one or more other locations, and at least once Adam got out of the vehicle but returned minutes later. Eventually, Kuchar took Adam back to his residence in Fort Wayne, and the Detectives lost sight of the Explorer while in Huntington City. Detective Boxell contacted

---

[1] As Detective Boxell was entering the town of Andrews, he got pulled over by Andrews Police Department Town Marshal Austin Bullock for speeding. Detective Boxell explained that he and another detective (in a separate vehicle) were part of an undercover operation and were in the process of locating the Explorer, believed to be at Bowers's house, in order to execute a search warrant on the vehicle. Marshal Bullock knew that Bowers was a resident of Andrews and was familiar with Kuchar, who he knew visited Bowers at his house.

Marshal Bullock to advise him that they had lost track of the Explorer but believed it might be returning to Bowers's home in Andrews.

[5]     Marshal Bullock spotted and stopped the Explorer, directing Kuchar and Bowers to place their hands in sight, but having them remain in the car until back-up assistance arrived. Within moments, Detectives Boxell and Whitacre arrived at the scene, as well as HPD Captain Shane Jones and Sergeant Andrew Ellet. Kuchar and Bowers were removed from the Explorer and handcuffed. Captain Jones conducted a pat down of Bowers for weapons but found none. Officers seated both men in the grass about fifteen to twenty feet apart.

[6]     At one point, while Detective Boxell was kneeling next to Kuchar and was about to read the search warrant to him, Detective Boxell noticed Bowers, who had been helped to a standing position, reach with his cuffed hands into the back of his pants. Concerned for their safety, Detective Boxell yelled to the other officers about Bowers's movements. Detective Whitacre told Bowers to stop what he was doing and get his hands out of his pants, and Captain Jones pulled Bowers's hands out of his pants. Detective Whitacre shook the elastic waistband of Bowers's pants, and a small plastic container fell from the bottom of Bowers's pant leg. Inside the container were two small baggies with red hearts on them and that contained pills, later determined to be hydrocodone. As Captain Jones was picking up the container, Bowers put his hands down the back of his pants again. Detective Whitacre again told Bowers to "stop reaching in his pants," and he shook the waistband of Bowers's pants again and patted his pant legs, and a clear plastic baggie with a crystalline substance, later

determined to be methamphetamine, fell to the ground out of Bowers's pant leg. *Id.* at 178. Officers then secured Bowers in the front seat of Captain Jones's vehicle.

[7] Meanwhile, officers searched the Explorer and, among other things, found a black safe, similar in appearance to a laptop, on the floor where Bowers had been seated. Inside the safe were the following items: a digital scale, plastic baggies, some of which had red hearts on them, and two tablets of paper. One tablet contained names and initials and "numerical values" next to those names, which officers believed through their training and experience indicated money owed "for product," and the other tablet also contained ledger-type information, including names or initials, addresses, and "numerical values," such as ".04", which officers believed reflected someone who was "ordering product" in the amount of "four tenths" or "four points." *Id.* at 134, 136-37. Many of the names, such as Possum, White Boy, Agent P, and Booster, were what police believed to be "street names" for individuals. *Id*. at 137.

[8] After the search of the Explorer, Detective Boxell went to the police vehicle in which Bowers was seated. As he approached, Bowers told Detective Boxell that he wanted to talk and make a deal. Detective Boxell stated that he was not in a position to do so. Thereafter, Bowers was transported to HPD, where Bowers participated in a video-recorded interview with Detective Boxell, which was later admitted at trial.

During the interview, Bowers stated that his involvement was that he knew someone who could get Kuchar the quantity of drugs he wanted. According to Bowers, the plan for the day was that Kuchar would pick up Bowers, they would pick up Bowers's connection, who would then go get the product, namely half an ounce of methamphetamine, and then Kuchar would sell it. Bowers told the detective that, for his participation, he was to get half a gram of methamphetamine for his personal use. Bowers told Detective Boxell that the black safe found in the Explorer was his and it was generally used in the transport of the drugs, but stayed with him, in his backpack, when not being used for transporting.

On September 5, 2017, the State charged Bowers with Level 2 felony dealing in methamphetamine and Level 6 felony possession of a narcotic drug. On December 27, 2017 Bowers filed a motion to suppress the evidence seized on September 1, arguing that police lacked reasonable suspicion that Bowers was committing a crime, his continued detention exceeded the scope of the stop, and the seizure of him was unreasonable, such that police violated his state and federal constitutional rights. The court held a hearing in February 2018. Marshal Bullock, Sergeant Ellet, Captain Jones, and Detectives Whitacre and Boxell each testified at the suppression hearing to being aware on September 1 that Bowers was out on bond for a felony possession of a handgun without a license charge, and Detective Boxell stated that, when he was arrested on that charge, the handgun was in the back of his pants. On May 5, the trial court issued an order denying the motion to suppress. At the June 2018 jury trial,

prior to the presentation of evidence, the trial court agreed with Bowers's request to show a continuing objection at trial as to admission of the contested evidence.

[11]     During trial, the State presented evidence that, on the day in question, Bowers had possessed five hydrocodone pills, in two packages, totaling 2.14 grams and also possessed 13.26 grams of methamphetamine. Detective Boxell explained that an ounce is 28 grams, half an ounce is 14 grams, an "8 ball" is one-eighth of an ounce or 3.5 grams, and "a point" is one-tenth of a gram. *Id.* at 110. He said he typically sees methamphetamine sold in the local area in "points or half a gram, maybe up to a gram," but an 8 ball (3.5 grams) was "relatively rare." *Id.*; *see also id*. at 149. In Detective Boxell's fifteen-year career, this was only the second time he had seen a quantity as large as Bowers's 13.26 grams.

[12]     Detective Boxell acknowledged that officers did not find any weapons on Bowers, but that when he observed Bowers shoving his handcuffed hands in the back of his pants while seated in the grass, he had concern for officer safety and immediately yelled to other officers about it. Detective Boxell testified that after the recorded interview with Bowers ended, Bowers continued to suggest that he could be an informant. Detective Boxell stated that he telephoned a prosecutor about Bowers's request but that the prosecutor declined, and when Detective Boxell told Bowers this information, Bowers was angry and continued to blame Kuchar, suggesting that Kuchar had thrown the drugs at Bowers's feet.

Bowers rested without presenting any evidence. Bowers's counsel conceded that Bowers was guilty of the Level 6 felony possession charge but argued that he was only a user and addict and that the State had failed to present evidence of Bowers's intent as required to convict him of dealing. The State maintained that it had presented evidence to show that Bowers intended to deliver the methamphetamine – to someone, although the recipient did not matter – but that even if the jury did not find that Bowers on his own intended to deliver it, that it had presented sufficient evidence that he "aided someone in their possession with intent to deliver," namely Kuchar. *Id*. at 183. The State's theory was that the evidence showed that Bowers was not merely a user and had the connections with "the big boys" in Allen County and that Kuchar needed "that hookup." *Id*. at 192.

The jury found Bowers guilty as charged. He now appeals.

## Discussion & Decision

## I. Admission of Evidence

Bowers claims that the trial court should have granted his motion to suppress the evidence that was seized from him. Where, as here, a defendant challenges the constitutionality of a search following a completed trial, the issue is one of whether the trial court properly admitted the evidence. *Bulthuis v. State*, 17 N.E.3d 378, 382 (Ind. Ct. App. 2014), *trans. denied*. Questions regarding the admission of evidence are entrusted to the sound discretion of the trial court. *Id*. Accordingly, we review the court's decision on appeal only for an abuse of

that discretion. *Id.* The trial court abuses its discretion only if its decision regarding the admission of evidence is clearly against the logic and effect of the facts and circumstances before it, or if the court has misinterpreted the law. *Id.* at 382-383. Regardless of whether the challenge is made through a pretrial motion to suppress or by an objection at trial, our review of rulings on the admissibility of evidence is essentially the same: we do not reweigh the evidence, and we consider conflicting evidence in a light most favorable to the trial court's ruling, but we also consider any undisputed evidence that is favorable to the defendant. *Id.* at 383.

[16] Bowers claims that his "ongoing detention after being cleared of weapons" and the search of his person violated his rights under the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution and that the seized evidence was fruit of the poisonous tree. *Appellant's Brief* at 10. Each of those constitutional provisions protect citizens from unreasonable searches and seizures.[2] Although Art. 1, Section 11 is nearly identical to its federal counterpart, our analysis under Section 11 is separate and distinct. *Peters v. State*, 888 N.E.2d 274, 278 (Ind. Ct. App. 2008) (citing *Holder v. State*, 847 N.E.2d 930 (Ind. 2006)), *trans. denied*. We will therefore engage in

---

[2] The Fourth Amendment provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated[.]" U.S. CONST. amend. IV. Section 11 in the Indiana Bill of Rights states, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure, shall not be violated[.]" IND. CONST. art. 1, § 11.

independent examinations of the propriety of the search and seizure under the Fourth Amendment and Art. 1, Section 11.

### A. Fourth Amendment

[17] Here, the Explorer was stopped for purposes of executing a search warrant issued as part of an ongoing drug investigation.[3] This court has recognized that "'a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted.'" *Shotts v. State*, 53 N.E.2d 526, 533 (Ind. Ct. App. 2016) (quoting *Michigan v. Summers*, 462 U.S. 692, 705 (1981) and holding that police could properly detain individual who entered house during execution of search warrant of the residence), *trans. denied*; *see also Harper v. State*, 922 N.E.2d 75, 80 (Ind. Ct. App. 2010) (officer may detain passenger of car during investigatory stop to make initial assessment of situation and alleviate concern for safety), *trans. denied*. More fully, "officers have 'authority to detain the occupants of the premises while a proper search is conducted,' without any degree of individualized suspicion" and may "use reasonable force to detain the occupants of the immediate vicinity of the premises to be searched for a reasonable period of time, which in many cases could mean the duration of the search."[4] *Shotts*, 53 N.E.3d at 535. Bowers maintains that, in his case,

---

[3] Bowers does not argue that the warrant was invalid or lacked probable cause.

[4] We recognize that *Shotts v. State*, 53 N.E.2d 526 (Ind. Ct. App. 2016), *trans. denied*, involved the execution of a search warrant at a home, but we find its reasoning equally applicable in the context of execution of a search warrant of a vehicle.

"while officers may have had the right to briefly detain him to do an initial assessment for officer safety," his "ongoing detention after being cleared of weapons" violated his rights under the Fourth Amendment. *Appellant's Brief* at 10-11. We disagree.

[18] In this case, the two occupants of the vehicle, which was being surveilled as part of a months-long investigation of a drug operation spanning multiple counties, were instructed to exit the car so officers could execute a search warrant of the vehicle. Both men were briefly patted down for weapons, which Bowers agreed to, and then seated in the grass, about twenty feet apart. The search of the vehicle had not even begun when Detective Boxell saw Bowers shoving his hands in the back of his pants. This timeline reveals that the length of the detention of the occupants relative to the execution of the search warrant was not for an unreasonable period of time.

[19] To the extent that Bowers is challenging the officers' use of handcuffs during his temporary detention, our Supreme Court has recognized that inherently dangerous situations may justify the use of handcuffs and that "the need to detain multiple occupants [may make] the use of handcuffs all the more reasonable." *Shotts*, 53 N.E.3d at 534-35 (quoting and discussing *Muehler v. Mena*, 544 U.S. 93, 99-100 (2005), where search warrant authorized search of home for weapons and sought a gang member who resided there). Here, the search warrant authorized officers to search the vehicle driven by Kuchar, who was suspected to be involved in a drug operation, which in turn are known to generally involve drugs, weapons, and money. Furthermore, the police had to

detain multiple occupants, Kuchar and Bowers, making the use of handcuffs "all the more reasonable." *Id*. Based on the facts of this case, we find that the officers' temporary detention of Bowers did not violate his Fourth Amendment rights.

[20] We now turn to the officers' search of Bowers. A search warrant is generally a prerequisite to a constitutionally proper search and seizure, and when a search is conducted without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search. *Washington v. State*, 922 N.E.2d 109, 111 (Ind. Ct. App. 2010). It is well-recognized that, under *Terry v. Ohio*, 392 U.S. 1 (1968), an officer may conduct "a reasonable search for weapons for the protection of the police officer, where the officer has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." *Washington*, 922 N.E.2d at 112. "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id*.

[21] Here, Bowers argues that the search of his person was unconstitutional because, "[w]hile officers may have had the right to briefly detain him to do an initial assessment for officer safety," they searched him "despite the fact that he was a passenger and not the target of the warrant or the investigation." *Appellant's Brief* at 17. Bowers's argument incorrectly connects the search of his person to the investigation and associated search warrant. However, Bowers was not

searched pursuant to the execution of the search warrant for the Explorer; he was searched because, as Detective Boxell was reading or about to read the search warrant to Kuchar, Detective Boxell observed Bowers making furtive movements with his hands, namely shoving his hands down the back of his pants. We flatly reject Bowers's claim on appeal that the "officers did not note any [] safety risks associated with Bowers or raise any articulable basis for reasonable suspicion that he had committed a crime." *Appellant's Brief* at 16. To the contrary, officers had immediate concern for their own safety when Bowers, who officers knew was out on bond for a recent arrest involving a handgun possession, was observed shoving his cuffed hands in the back of his pants. As Detective Whitacre ordered Bowers to get his hands out of his pants, Captain Jones yanked his hands out. A reasonably prudent person in the same circumstances as Detectives Boxell and Whitacre, or indeed any of the officers at the scene, would be warranted in the belief that their safety was in danger. The search of Bowers's person was valid under the Fourth Amendment. *See e.g.* *Williams v. State*, 754 N.E.2d 584, 588 (Ind. Ct. App. 2001) (officer had reasonable fear for his safety, and subsequent patdown was valid, where defendant during traffic stop was nervous and sweating and kept putting hands in pockets despite being told to remove his hands from his pocket and waistband area), *trans. denied*; *State v. Dodson*, 733 N.E.2d 968 (Ind. Ct. App. 2000) (officer's search of vehicle for weapons during investigatory stop was based on reasonable concern for safety where defendant made furtive movements, hesitated at officer's commands to exit vehicle, and was wearing empty shoulder holster).

## B.  Article 1, Section 11

Bowers claims the detention and search also violated Art. 1, Section 11, of the Indiana Constitution.  "To determine whether a search violated the Indiana Constitution, our courts must evaluate the reasonableness of the police conduct under the totality of the circumstances." *Peters*, 888 N.E.2d at 280.  Our determination of the reasonableness of a search or seizure under Section 11 often "turn[s] on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." *Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005).  Reasonableness under the totality of the circumstances may include considerations of officer safety. *Mitchell v. State*, 745 N.E.2d 775, 786 (Ind. 2001).  The burden is on the State to show that each relevant intrusion was reasonable in light of the totality of the circumstances. *Id.*

Bowers maintains that (1) there was "a low degree of concern, suspicion or knowledge that a violation had occurred," given that officers had never seen Bowers at the Columbia Street residence and the Explorer did not belong to him, (2) "the degree of intrusion was high," given that Bowers "happened to be in a car with a man the officers suspected of drug dealing" but police had "[n]o such suspicions" as to Bowers; and (3) "law enforcement needs were low," because they had just begun to execute the search warrant and, further, they knew Bowers, including where he lived, and they simply decided "from the outset" that Bowers would remain in custody "until they found a sufficient

basis for arrest." *Appellant's Brief* at 19. Accordingly, he argues that the detention and search were unreasonable under the totality of the circumstances. We disagree.

[24] Contrary to Bowers's claim, the degree of concern or suspicion that a violation had occurred was not low. Officers stopped Kuchar and Bowers in Kuchar's vehicle based on a search warrant, which in turn was based on probable cause, stemming from a months-long investigation and surveillance of a drug operation. This reflects more than a low degree of concern or suspicion. As to the degree of intrusion, we have already discussed that officers had the authority to detain both of the occupants while the search warrant was being executed. It was only after Bowers – who had been seen carrying a large backpack to the Explorer and driving around all day with Kuchar (a target of the drug investigation) to various stops in multiple counties, and who police knew was out on bond on a recent handgun charge – reached his hands into the back of his pants, did officers search Bowers by pulling on the waistband of his pants and patting down his legs. At that point, law enforcement needs were considerable, as officers had a reasonable belief that their safety was at issue. We conclude that the officers' conduct in detaining and searching Bowers was reasonable under the totality of the circumstances.

Finding no violation of the Fourth Amendment or Art. 1, Section 11, we conclude that the trial court did not abuse its discretion in admitting evidence seized from Bowers.[5]

## II. Sufficiency of the Evidence

Bowers claims that the State did not present sufficient evidence to convict him of dealing. Our standard of review for a sufficiency of the evidence claim is well settled. In reviewing sufficiency of the evidence claims, we will not reweigh the evidence or assess the credibility of the witnesses. *Richardson v. State*, 856 N.E.2d 1222, 1227 (Ind. Ct. App. 2006), *trans. denied*. We consider only the evidence most favorable to the judgment, together with all reasonable and logical inferences to be drawn therefrom. *Id*. We will affirm unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Montgomery v. State*, 22 N.E.3d 768, 779 (Ind. Ct. App. 2014), *trans. denied*. "In essence, we assess only whether the verdict *could* be reached based on reasonable inferences that may be drawn from the evidence presented." *Baker v. State*, 968 N.E.2d 227, 229 (Ind. 2012) (emphasis in original).

---

[5] We note that Bowers filed two separate motions to suppress: a Motion to Suppress Involuntary Confession, arguing that his statement to police was involuntary due to intoxication, coercion, and promises of leniency, and (2) a Motion to Suppress Evidence, arguing that his detention and the search violated his state and federal constitutional rights. Bowers's appellate arguments focus solely on the physical evidence that was seized. However, we observe that his Motion to Suppress Evidence requested that the trial court suppress "all property seized . . . *and* all statements made by [Bowers.]" *Appellant's Appendix Vol. 2* at 30 (emphasis added). We find that, for the same reasons that the seized evidence was properly admitted, his statement was likewise properly admitted.

[27] To convict Bowers of Level 2 felony dealing methamphetamine as charged, the State was required to prove beyond a reasonable doubt that he possessed methamphetamine in an amount of at least ten grams with intent to deliver it. Ind. Code § 35-48-4-1.1(e)(1). In this case, Bowers contends that the State did not prove the intent element of the offense.

[28] Our courts have recognized that, unless there is an admission, a jury must look to reasonable inferences based on a consideration of the surrounding circumstances to determine whether there is a showing or inference of the requisite criminal intent. *Diallo v. State*, 928 N.E.2d 250, 253 (Ind. Ct. App. 2010); *see also Davis v. State*, 791 N.E.2d 266, 270 (Ind. Ct. App. 2003) ("Intent, being a mental state, can only be established by considering the behavior of the relevant actor, the surrounding circumstances, and the reasonable inferences to be drawn from them."), *trans. denied*. Possessing a large amount of a narcotic substance is circumstantial evidence of intent to deliver. *Davis*, 791 N.E.2d at 270.

[29] In arguing that the evidence was insufficient to convict him of dealing, Bowers points to the facts that (1) law enforcement was conducting an investigation of the Columbia Street residence where Kuchar – but not Bowers – had been seen coming and going on multiple occasions, and (2) police had a search warrant for Kuchar's Explorer in which Bowers was only a passenger. Thus, Bowers argues, "[w]hile it was reasonable to infer that *Kuchar* was dealing methamphetamine, the evidence and the inferences do not establish that *Bowers*

intended to deal methamphetamine." *Appellant's Brief* at 23 (emphasis added). We disagree.

[30]     Bowers was found in possession of 13.26 grams of crystal methamphetamine, as well as 2.14 grams of hydrocodone pills. According to Detective Boxell, those quantities were consistent with dealing and not merely personal use. Indeed, he stated that in his fifteen years of law enforcement it was only the second time that he had seen such a large quantity of crystal methamphetamine in the Huntington community. Police watched Bowers enter the Explorer with a very large backpack, and officers surveilled the Explorer all day as Kuchar, a suspected drug dealer, drove around making stops in Huntington and Allen counties. Police eventually stopped the Explorer and executed the search warrant of the vehicle and found on the passenger-side floor, where Bowers was seated, a safe. Bowers admitted that the safe belonged to him and that it was used to transport drugs. Inside of the safe, police found a digital scale, baggies some of which had red hearts on them like the baggie that had fallen out of Bowers's pants, and two tablets of notebook paper with ledger-type information consistent with drug sales. Bowers described to Detective Boxell Kuchar's involvement in the drug-dealing operation and that he (Bowers) knew people to provide Kuchar with drugs to sell. The State presented sufficient evidence from which the jury could infer that Bowers had the requisite intent to deal methamphetamine.

[31]     Judgment affirmed.

Kirsch, J. and Vaidik, C.J., concur.